TAINTER *vs.* THE MAYOR OF MORRISTOWN.

1. Upon a motion to dissolve, the allegations of the answer, supported by affidavits, must be taken as established.

2. The unlawful cutting down of fences, shade trees, and ornamental shrubbery is an irreparable injury, and, where established, will be suppressed by the preventive powers of this court.

3. A return of surveyors of the highways, coming up collaterally in this court, cannot be judged void, or disregarded for any irregularity or deficiency, if the surveyors had jurisdiction of the subject matter.

4. It is not necessary that a commission be appointed to ascertain the lines of an ancient highway before proceeding to remove encroachments

Tainter *v.* Mayor of Morristown.

alleged to be thereon, when the true limits and courses thereof can be ascertained with accuracy and certainty, and, in fact, are so ascertained by survey.

5. Time will not legalize an encroachment upon a public highway.

6. The act of March 24th, 1859, (*Nix. Dig.* 751,) applies not to ancient highways, but to roads not opened, used, or worked within twenty years after being laid out.

This was a motion to dissolve an injunction, made upon the bill and answer and the affidavits annexed.

*Mr. Pitney*, in support of the motion.

The bill impliedly admits that Elm street should be sixty-six feet wide.

The courses of the lines of South and Elm streets, taken from complainant's deed, show that those streets meet at an acute angle, making an obtuse angle of one hundred and fifteen degrees on complainant's lot. Hence the measurement of sixty-seven and a half feet along South street was a diagonal measurement, and shows the street less than sixty-six feet wide.

The northwest line of the street, as fixed by the bill, shows that the required width must come from the complainant's lot, as we claim.

The complainant is careful not to swear that the fence has stood in its present position more than thirty-seven years.

The question of adverse use was settled in the case of *Cross* v. *Morristown*, 3 *C. E. Green* 305. See also *Mayor of Jersey City* v. *Morris Canal and Banking Co.*, 1 *Beas.* 560–1, opinion of Whelpley, J.

Hence, complainant's case fails on the bill.

If the fact of a diagonal measurement had appeared to the Chancellor, it is evident no injunction would have been granted.

The answer shows a street or road laid out by surveyors in 1786. If proceedings of surveyors voidable, yet it is too late now to set up such defect. The complainant is bound by long acquiescence.

The survey is an ancient record. The street has been opened and used in accordance with it. It is recognized in the deed under which complainant claims title.

The survey shows that Stites' line corresponds *in course* with the line of actual use, excepting along complainant's land. If there is any mistake in Stites' line, it is in favor of the complainant. The deed from James Wood to Albert Barnes shows that complainant's fence encroaches on Elm street five feet and eleven inches—just what we claim. Mr. Barnes' affidavit is conclusive.

We insist that the location of the street is sufficiently certain to dispense with appointment of commissioners, under section seven, supplement of 1866, to charter of Morristown. At any rate, commission is not necessary to show that complainant's fence is an encroachment.

It is useless to continue injunction until final hearing, as it is manifest the case cannot be changed.

The fixing of thirty-seven years by the complainant, as the time that the fence has occupied its present position, shows that she knew of Mr. Barnes' change; and affidavit of Norris shows warning and notice.

The defendants should have costs.

*Mr. Vanatta,* contra.

The injuries threatened by the defendants, and complained of in the bill, viz. removing and destroying shade trees, shrubbery, and fences, and seizing land and appropriating it to public use, are irreparable mischiefs, and proper to be prevented by injunction. The intent to do the mischief is not denied, but admitted, and sought to be justified.

The injunction was granted, and it rests upon the ground, that long possession of lands adjoining a street, and long usage of the street in conformity to that possession, are evidence of *where the street is. Den d. Haring* v. *Van Houten,* 2 *Zab.* 61.

After so long a possession, accompanied by title, as is shown by the bill and admitted by the answer, especially

where the possession was taken in good faith, and has been so held, as is the fact in this case, the party in possession should not be ousted, and the land wrested from her, until a paramount legal title to the *locus in quo* has been judicially established. And she is entitled to retain the possession until that is done.

The defendants have no rights in, or power over, the premises in question, unless the grantors of the complainant, more than thirty-seven years ago, were guilty of a purpresture. Such a question (if this court will decide it at all) should not be decided on a motion to dissolve an injunction.

To dissolve the injunction is practically to decide the whole case against her, and take her land from her at once, although it may be at the final hearing she will be able to show that the charge of purpresture made against her grantors is unfounded.

The rightfulness of a possession so *bona fide*, and of such long duration as the complainant's, should not be tried or decided upon *ex parte* affidavits.

Besides that, if it should be established that the complainant's fence does encroach upon the limits of the old road survey, the question would still remain, whether the encroachment is so injurious to the public as to require its abatement. 2 *Waterman's Eden on Injunc.* 259, 260; *Rex* v. *Lord Grosvernor*, 2 *Starkie's Nisi Prius* 511. That question the court will hardly dispose of on a motion to dissolve an injunction. In such cases, the court will preserve the property in dispute until the legal right is decided. 2 *Waterman's Eden on Injunc.* (3d ed.) 271–3, *note* 3.

In this case, the court may order an issue to try the question whether complainant's fence encroaches upon the highway; or the court, perhaps, may try the question of nuisance or no nuisance; but it will not try that question on a motion to dissolve an injunction, when the whole defence rests upon the location of a line run in 1786, and when the possession for over thirty-seven years has been in contradic-

tion of the location of that line, as now made by the defendants.

To dissolve the injunction on *ex parte* affidavits is, in effect, to allow the defendants to locate the line themselves, and to turn the complainant out of possession before her right is tried.

In short, my point is this: the complainant is *bona fide* in possession of land by actual enclosure; it is included in her deed. Her possession has been of more than thirty-seven years' duration. No one can, therefore, legally turn her out of possession, on the pretext that her fence is inside of an old road survey, until after judgment against her right in a court of competent jurisdiction; and if any one attempts to turn her out before such judgment, in such manner that the eviction will work an irreparable injury, this court will restrain them by injunction.

The line of the street is not so proved by the defendants, that the court can now say that the line insisted upon by the defendants is the true line.

Not only are the line and monuments designated by defendants' survey not in accordance with those established, but, on the contrary, every location and possession on the west side of Elm street, as appears by the map annexed to their answer, is a contradiction of the accuracy of that survey.

It is admitted by the answer, that the complainant is occupying pursuant to the deed from James Wood to Albert Barnes, dated the 12th of March, 1829, and that she does not encroach upon the street as described in that deed. The description in that deed has been followed ever since in conveyances and possession—over thirty-eight years. It is to be assumed that Wood and Barnes understood the street to be according to that description. Their understanding at that time, of where the street lines were, was much more likly to be correct than any conclusion Mr. Stites may now arrive at. James Wood was cotemporary with Elm street. He owned more land on the street than any one person.

That deed is his testimony as to where the street was. The affidavit of Mr. Barnes shows that, in 1829, the line of the street was understood and believed to be just where the complainant claims it to be, and he located his fence accordingly.

The well settled principle is, that practical location is evidence of a mistake in the description. *Opdyke* v. *Stephens*, 4 *Dutcher* 89, 90.

This principle, where surveys have been made by the compass, is indispensable and invaluable. Without it, the utmost confusion and mischief would ensue. Without being guided and controlled by established, recognized monuments, or recognized lines of occupation, no line of any considerable length, run by the compass, can be accurately ascertained, even one day after it is run. The diurnal variation of the needle, and the variation produced by ever-changing local causes, make the compass incapable of marking a long line twice in the same place. The diurnal variation of the needle, amounting often to three-fourths of a degree in a day, in a line of twenty-four chains, would amount to over seven feet. Hence there is not one chance in one thousand that Stites has found the line run in 1786.

Mr. Barnes' affidavit is, that he placed his fence to the eastward of what was then understood to be the easterly line of Elm street. His deed so said; and Matthew G. Lindsley, a very old man if he were now living, and a cotemporary of Elm street, so told Mr. Barnes. It is improbable that Lindsley advised his pastor to encroach upon the highway. If Barnes did so encroach, it is improbable that everybody, for thirty-six years after Mr. Barnes sold the property and left Morristown, would acquiesce in an encroachment. Could Mr. Barnes have been cross-examined, it would have been shown that he placed his fence where it was then understood the line of Elm street was.

Moreover, it would have been shown that, for many years before he built his fence, there was no fence at all on the South street side of his lot.

The affidavit of John Crowell shows that, from 1818 to 1829, and until Mr. Barnes put one up, there was no fence at all on the South street side of the complainant's lot. To the same effect is the affidavit of Edwin L. Lounsbury. A perusal of these two affidavits cannot fail to convince the court that it should not, by its judgment, fix that street line upon *ex parte* affidavits.

By Mr. Barnes' affidavit, it appears that he terminated his fence on Elm street in a line with the fence on the Campfield lot. Yet that fence, where it joined to Mr. Barnes' fence, by Stites' survey, stood over two and one half feet in the street.

Again: Stites refers, and the answer does, to Nathan Ford's deed to James Rogers, in 1804. And yet Stites' line is two links different from the street line of that deed. His survey is wrong, because it conflicts with the practical location at every point.

By Stites' affidavit, it will be seen that he fixed the beginning of Elm street by *mere assumption.* He says he found the southeasterly corner of Frederick King's lot by running over a well, &c. Then he went along Morris street northwesterly, two chains and twenty-eight links. He says, that at the end of two chains and twenty-eight links, he " assumed to be the southwest corner of the first lot," &c. He does not swear that there is any corner at the end of that line; nor is there, in fact. Hence he " *assumed* " a corner, and upon that builds his whole survey.

As to the other and principal monument, namely, the division line between Nathan Ford and Chilion Ford, and Nathan Ford and David Ford, (which division line was the centre of Elm street,) Stites does not pretend to say that he knows where it is, nor what it was. Nor does he pretend that he found that line.

Although the centre line of the road survey is south 28° 30′ west, yet that course is subordinated to the partition between the Fords. It is a case in which the road *must* be located by the monument, and not by the course. His whole

survey is based upon an erroneous principle, and upon assumptions. The road was tied to a monument. He has run it by the course, and disregarded all monuments, except such as he assumed.

Again : the map of Elm street, appended to the answer, shows, that at the mouth of Elm street the defendants have one hundred and eighteen feet for road purposes ; fifty-five feet seven inches of that they devote to a useless park, and that has been extended to the eastward lately. The plaintiff's grantor purchased, in common with others, that ground, and devoted it to street purposes, and the defendants have accepted it for that purpose. The buying of the land to extend Elm street westward, implied an understanding that it should not be extended eastward. Having accepted that gift on those conditions, and now having it, it is inequitable for the defendants to spread the road in the Chester lot, now complainant's.

When Mr. Chester was solicited to contribute to that purchase, he was shown a map, showing how the ground was to be used, and he paid his money upon the faith of that arrangement being carried out. By that map, there was to be a street thirty-three feet wide, between Mr. Chester's lot and the park ; a street of like width between Mr. Muchmore's (now Mrs. Turner's) lot ; and the residue, leaving fifty feet front on South street, was to be put into a park.

The understanding with Mr. Chester was, that the park on South street should be fifty feet. Stites' map, annexed to the answer, shows that the park on South street is fifty-five feet and seven inches.

They say Mrs. Tainter's fence encroached five feet ten inches. Brookfield's map, put alongside the map appended to the answer, shows that the defendants' fence encroaches five feet seven inches.

Instead of admitting that Elm street is sixty-six feet wide, the insistment of the bill is, that the street as actually used, are its proper and rightful limits.

E *

The fact that Elm street does not intersect South street at right angles abundantly appears by the bill. The bill expressly states that the measurement of the mouth of Elm street at South street, was on the easterly side of South street.

The affidavit of Mr. Stone, appended to the bill, is to the same effect. Hence, it appears that it is not true, as alleged in defendants' points, that if the fact of diagonal measurement had appeared to the Chancellor, the injunction would not have been granted. That fact did appear in every way possible.

The only legal authority for laying out such a road in 1786 was the act of March 11th, 1774. *Allinson, p.* 387, § 3.

Scarcely a single one of the requirements of that act was complied with. Its requirements were—

1. That not less than ten freeholders might apply, *in writing,* to the two surveyors of the town where the road was proposed to be laid, &c.

By the return of the surveyors, nor in any other way, it does not appear that any such application was ever made to the surveyors.

2. That two of *the applying persons* should sign and fix up advertisements in three of the most public places of the township where the said road was proposed to be laid.

It does not appear by the return of the surveyors, nor in any other way, that any such, or indeed any kind of notice was given.

3. The return does not show, nor does it appear, that the other requirements of the act were complied with, except that the time for opening it is named. The return fails to show any power, authority, or jurisdiction in the surveyors. Being a special statutory authority, it cannot be presumed. Hence the survey is a nullity.

If good at all, it is only good so far as executed. It will not authorize the public to go beyond what they have actually used. That return *per se,* does not legally condemn any land to public use. If the public have rights, they must rest

upon dedication and use, and not upon the survey and return, because both were without authority of law.

Outside of the occupied lines, the defendants can take nothing, except by a *legal condemnation* of the land to public use. They show no such condemnation. Hence they have no right, outside of what has been used for a street within twenty years last past. *Rex* v. *Inhabitants of Audley*, 2 *Salk.* 526; *Rex* v. *Croke*, *Cowper* 26; *Rex* v. *Manning*, 1 *Burr.* 371; *Rex* v. *Liverpool*, 4 *Burr.* 2244; *N. J. R. and T. Co.* v. *Suydam*, 2 *Harr.* 30.

The return of the surveyors set out in the answer is void, because it does not show upon its face, jurisdiction in the surveyors.

The defendants are out of possession. They assert title to the premises in dispute. The *onus probandi* is on them. They must *prove a legal title.*

Such a return may be admissible as evidence on a question of boundary between two adjoining proprietors. 2 *Zab.* 61. But to divert the title of the land owner who is in possession, it is not sufficient.

Suppose they offered a sheriff's deed, in which no execution was shown, could they recover upon such a deed?

THE CHANCELLOR.

The complainant, Mrs. Tainter, owns a lot of land in Morristown. It is bounded on the south by South street, and on the west by Elm street. The fence in front of her lot along Elm street, has stood where it does now for thirty-seven years. Within it, at the distance of two feet, stands a hedge of arbor vitæ, and also a row of five evergreen trees, of some years' growth; and at the edge of the sidewalk, seven feet from the fence, stand fourteen large elm trees.

The defendants, the mayor, recorder, aldermen, and common councilmen of Morristown, are the municipal governors of that town, and have, by their charter, power by ordinance to prevent and remove obstructions, encroachments, and

encumbrances, in and upon all streets, highways, and sidewalks, and to regulate the planting and preserving of ornamental shade trees in the streets, parks, and grounds of the town. They have power, also, to appoint a commission to run, mark, lay out, and designate the lines and courses of any street that are not ascertained and clearly designated.

The defendants caused a survey of Elm street to be made by the town surveyor, and a map of such survey, giving the bounds of that street, to be filed in the office of the town clerk. This survey took in a gore of the complainant's lot, on the east side of the street, five feet ten inches wide on South street, and five chains eighteen links long along Elm street. And on the 24th of May, 1867, the defendants passed an ordinance directing the fence and other obstructions on that gore to be removed, and the street to be opened and cleared out to the width laid down on the map. And they caused a notice to be served on the complainant to remove the fence and other obstructions on the gore within twenty days.

The complainant insists that the defendants have no right to cause her fence and improvements on that gore to be removed, because Elm street has never been laid out as a street by any competent authority, and has no legal existence except by dedication or usage, and has no limits except such as have been indicated or established by usage; and because, if it has been laid out, the lines of it cannot now be ascertained, and because she, and those under whom she claims, have had peaceable and exclusive possession of it for thirty-seven years, and should not now be disturbed in these improvements.

The defendants answer, that Elm street was laid out as a public highway, by six surveyors of the highway, according to law, on the 2d day of September, 1786, by a return dated on that day, and recorded on the fifth of the same month, in the record of roads, in the office of the clerk of the county, and verify this by a duly authenticated copy of the return annexed to the answer.

They further answer, that the monuments called for by the return are easily found, and the true limits and courses of the road ascertained with accuracy and certainty, and that the survey made and filed by them gives the true location and limits of it. They admit that the west side of said street, at its junction with South street, is at a point indicated in the bill; that is, one foot easterly of a large elm tree standing there, which the complainant alleges is sixty-seven feet six inches distant along the north side of South street from her fence. But defendants answer that Elm street was laid out sixty-six feet wide, as appears by the return, and that it meets South street, not at right angles, but at an angle of one hundred and fifteen degrees, and that the distance across from the elm tree to the fence of the complainant, at right angles to the course of Elm street, is sixty-two feet, which will locate the complainant's fence at a distance of sixty-one feet from the west side of the street, or five feet at that point within the street.

The defendants admit that the fence along Elm street has stood where it now stands, at the junction of South street, since 1829, but not for the whole front of the lot. And they answer that before 1829, the fence in front of complainant's lot stood exactly on the line laid down in their survey of the street; that in 1829, Albert Barnes being the owner of the lot, and being informed that he had the right to extend his fence about six feet further into the street at South street, did so extend it; and this part of the answer is verified by the affidavit of Albert Barnes annexed to the answer.

The defendants set out the description in a deed for this lot, made by James Rogers to Nathan Ford, dated May 5th, 1804—a deed through which the complainant derives title. In this deed, the south side of this lot, along South street, is nine links, or six feet, less than in the deed from James Wood to Albert Barnes, dated March 12th, 1829, the oldest of a series of deeds set forth in the bill of the complainant, all describing the lands by the same courses and distances; the

intermediate deeds appear not to have given courses and distances.

These allegations of the answer are verified by the affidavits of the town surveyor and others, and by copies of deeds, duly certified, annexed to it.

For the purpose of this motion, the facts must be taken as established: that Elm street was laid out by surveyors in 1786, of the width of sixty-six feet; that prior to 1829 it was open at the front of the complainant's lot to the width of sixty-six feet, and to the line which the map and survey of the defendants lay down as the east side of the street; that in 1829, Albert Barnes, who then owned the lot, moved out the fence to the line where it now stands, or nearly to that line, where the fence has since stood, and the owners have planted the trees and shrubbery inside of it, where they now stand, without any interference by the public authorities; that the monuments of the survey of the road can be ascertained with accuracy, and locate the street where the survey and map of the defendants locate it.

The injury alleged by the complainant is one from which she is entitled to be protected by injunction. If the case stated in her bill was not denied, the injunction would not be dissolved. The injury by unlawfully cutting down fences, shade trees, and ornamental shrubbery, is irreparable, and ought to be suppressed by the preventive powers of this court.

The complainant placed her title to relief on three grounds: that the road was never lawfully laid out; that its boundaries cannot be ascertained by survey; and that thirty-seven years adverse possession gives her the right to this gore, if it was clearly within the limits of a lawfully laid out highway.

The answer and the return of the surveyors show that Elm street was laid out according to law. It is objected that it does not appear by the return that proper notices of the meeting of the surveyors were put up, as required by the act of March 11th, 1774, (*Allinson's Laws* 386,) the road act in force at this return. That act does not, as the later

I had to require the surveyors to take proof and be satisfied that the notice directed had been given, nor does it make such proof a part of their return. According to the principles by which courts of law are governed, under that act a return would not be set aside when brought up directly on *certiorari*, because the evidence of this did not appear in the surveyor's return.

In this case the return comes up collaterally, and cannot be judged void, or disregarded, for any irregularity or deficiency, if the surveyors had jurisdiction of the subject matter. The proceeding to lay out a road is a proceeding *in rem*, not against the person. It requires no citation or personal notice; public advertisements only are directed. Nothing is required to give jurisdiction of the person. Of the subject matter—the laying out roads—the surveyors had unquestioned jurisdiction, and their acts, when within their jurisdiction, cannot be questioned collaterally. Besides, in this case, where the road has been used by the public eighty years under that return, the court would presume that the proceedings of the surveyors were lawful, although matters requisite to give the surveyors jurisdiction did not appear in the return.

The courses and lines of this road can be ascertained with reasonable certainty. The affidavit of the surveyor, the old elm tree on the westerly side of the road, the setting out the fence into the road by Barnes, the difference in the length of the south side in the deed to Barnes from that in the older deed, and the survey from the calls in the return, show as much certainty of location as can be had in any old road, or in most of those recently laid out. I cannot say, therefore, that it is a case in which the defendants were bound to appoint a commission to ascertain the lines before proceeding to remove the encroachments.

The possession for over twenty years can avail the complainant nothing. It is well settled that time does not run against the state, or the public, by analogy to the statute of limitations against individuals, but only where the state or

public are expressly included. This is a wise and wholesome principle that I feel no inclination to disregard or to narrow. To protect highways from encroachments that it is the business of no one to resist, requires that the public be allowed to resume its rights at any distance of time, disregarding any loss to those who have appropriated and erected improvements on the public domain, or to the more innocent purchasers from them.

The authorities on this point are ably collected and digested in the opinion delivered by Chief Justice Beasley, sitting in this court as master, in place of the Chancellor, in the case of *Cross* v. *Morristown,* 3 *C. E. Green* 305, which opinion is of itself weighty authority on this point. The act of March 24th, 1859, *Nix. Dig. (4th ed.)* 836, § 78, referred to by complainant's counsel, does not affect this case; both by its terms and the recitals in the preamble, it applies only to roads which have been laid out, but not opened, used, or worked, and merely says that if not opened, used, or worked for twenty years after being laid out, they shall be vacated.

The legislative recognition of the necessity to pass this act to affect that purpose, is confirmation of the principle that without such statute time will not bar the public.

The equity of this bill being fully answered, and the answer being supported by documents and affidavits that leave in my mind no doubt of its truth, the injunction must be dissolved. If I had serious doubts as to the truth of the statements in the answer, the grave injury in this case might call upon me to exercise the discretion sometimes assumed by the court, of retaining the injunction until the decision of the cause.