## GEMENY *v.* PRINCE GEORGE'S COUNTY, MARYLAND

[No. 244, September Term, 1971.]

*Decided January 11, 1972.*

86

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Karl G. Feissner* and *Thomas P. Smith,* with whom were *William L. Kaplan, Fred R. Joseph, Andrew E. Greenwald, Walter E. Laake* and *Feissner, Kaplan & Smith* on the brief, for appellant.

*Harry L. Durity, Deputy County Attorney,* and *Michael O. Connaughton, Associate County Attorney,* with whom was *Walter H. Maloney, Jr., County Attorney,* on the brief, for appellee.

MCWILLIAMS, J., delivered the opinion of the Court.

For the first time we are required to consider a difference of opinion in respect of the charter adopted by the voters of Prince George's County on 3 November 1970, and, to be sure, one need not be a prophet to predict that it will not be the last time. We shall relate what happened before saying why we shall affirm the order of the chancellor, Loveless, J.

Section 504 of the charter provides:
"The County Executive shall appoint the members of all boards and commissions, subject to confirmation by the Council as required by Section 322 of this Charter * * *."

The pertinent language of Section 322 is:

"The Council shall hold public hearings on all such appointments not less than ten days and not

more than twenty days after their submission to the Council by the County Executive. If the Council fails to act to confirm or reject such appointments within thirty days of their submission to the Council by the County Executive, the appointment shall stand approved. * * * In the case of appointments by the County Executive to membership on a board or commission, a vote of a majority of the full Council shall be required to reject such appointment."

On 29 June 1971 the County Executive gave notice to the 11 member County Council that he had nominated the appellant (Gemeny), Joan Beck and Johanna Norris to fill vacancies on the Washington Suburban Sanitary Commission. The time established by the Council for the public hearing was 26 July at 10 a.m. Due notice thereof appeared in three local newspapers.

The chairman of the County Council called the hearing to order at 10:10 a.m. on the appointed day. Four members were present. The fifth arrived at 10:20 a.m.; the sixth at 10:35 a.m. The chairman announced, before the hearing began and after the arrival of the sixth member, that no action would be taken on the nominees until the meeting of the Council scheduled for 4 August. After the nominees had presented their respective statements about 36 persons spoke in behalf of one or the other of the nominees. Eleven of those who spoke favored Gemeny. None of the speakers was sworn.

Around mid-morning Councilman Reeder (one of the six present) left the room to go to the toilet or, as put, with obsequious delicacy, by counsel for Gemeny, "to answer nature's call." He was gone for about five minutes. At 11:55 a.m. he left once more. This time he was absent for about 45 minutes. During each of his absences the other five members remained in the hearing room. None of them, it seems, had occasion to leave the hearing room. While it was alleged that the chairman also left the hearing room for "a brief period," it was not

shown that he and Reeder were absent at the same time. At any rate only Reeder's absences are in issue here.

At the conclusion of the hearing the chairman announced "that the appointments [would] be taken under advisement." Reeder, who had returned to the hearing room in time to hear the remarks of the last two citizens to speak, subsequently listened to a recording of what had been said during his absences. Some of it, he said, was inaudible.

At the meeting on 4 August, all members being present, Johanna Norris was confirmed; Gemeny and Joan Beck were rejected. Reeder voted for the motion to confirm Gemeny and against the motion to reject him. The motion to confirm failed by a vote of 5 to 6. The motion to reject was carried by a vote of 7 to 4.

Ten days later Gemeny filed his bill of complaint for "injunctive and other relief." Two weeks thereafter he filed an amended bill seeking a declaration that, because of the lack of a quorum during Reeder's two absences at the hearing on 27 July, his rejection on 4 August was null and void. The case came on for a hearing before Judge Loveless on 2 September. On 14 September he declared the action of the Council in rejecting the appointment of Gemeny to be "legal, valid and final." Gemeny's appeal was filed on 5 October. The case was argued in this Court on 11 November.

It seems to be settled at common law that a majority of the elected members of a municipal body constitutes a quorum, and unless otherwise expressly provided in a charter or statute, the common law rule prevails. *Zeiler v. Central Railway Co.*, 84 Md. 304 (1896) ; *Heiskell v. Mayor and City Council of Baltimore*, 65 Md. 125 (1886) ; *Clark v. City Council of Waltham*, 328 Mass. 40, 101 N.E.2d 369 (1951) ; 4 McQuillen, *Municipal Corporations* § 13.27 (1968 rev. ed.). It is settled also at common law and under most statutes that a quorum of the body is required for "the transaction of business," and the passage of any motion, ordinance, by-law, or any other per-

mitted act in the absence of a quorum is void. *City of Harve de Grace v. Bauer,* 152 Md. 521 (1927) ; *Murdoch v. Strange,* 99 Md. 89 (1904) ; 4 McQuillen, *Municipal Corporations* § 13.27 (1968 rev. vol.) ; 56 Am. Jur. 2d *Municipal Corporations* § 163 (1971) ; 62 C.J.S. *Municipal Corporations* § 399 (1949).

Section 316 of the charter provides, among other things, that "[a] majority of the members of the full Council shall constitute a quorum for the *transaction of business * * *.*" (Emphasis added.) It provides also that "[n]o business shall be transacted, or any appointments made, or nominations confirmed, except in public session." Since Section 301 of the charter directs that "[t]he Council shall be composed of eleven members" it is obvious that a quorum would require the presence of six members.

Gemeny's contention hinges mainly on the apposite connotation of the expression "transaction of business." If holding a public hearing can be said to be the "transaction of business" then his contention would have some merit. We see it differently, however. We think a public hearing held pursuant to Section 322 of the charter is not the transaction of business within the meaning of Section 316. Indeed, the penultimate sentence [1] of Section 316 seems to make a clear distinction between the transaction of business and "appointments made or nominations confirmed." There are cases holding that the acceptance of resignations, *Dombal v. City of Garfield,* 129 N.J.L. 555, 30 A. 2d 579 (1943), and the filling of vacancies in a council, *Burns v. Stenholm,* 310 Mich. 639, 17 N.W.2d 781 (1945), *Commonwealth ex rel. Park v. Kaiserman,* 330 Pa. 196, 199 A. 143 (1938), constitute the transaction of business. *See also Muenninghoff v. Marret,* 269 Ky. 826, 108 S.W.2d 878 (1937) ; *Doughty v. Scull,* 96 A. 564 (N. J. 1915). There are also cases which take a contrary view. An example is *Prezlak v.*

---

**1.** "No business shall be transacted, or any appointments made, or nominations confirmed, except in public session."

*Padrone,* 67 N. J. Super. 95, 169 A. 2d 852, 856 (1961), where a city charter provided that no "corporate action" could be taken except by affirmative vote of a majority of the whole city council. Nonetheless it was held that a majority of the quorum could fill a vacancy in the ranks of the council. We shall forego further discussion of these cases not alone because their impact upon our decision would be minimal but principally because the charter and the resolutions of the Council in themselves furnish adequate decisional material.

On 2 April 1971 the Council adopted "Rules of Procedure * * * [to] be in effect at all meetings of the Council." The pertinent provisions of those rules follow:

> "1. *GENERAL POLICY PROVISIONS*
>
> > "101 *TYPES OF MEETINGS* Pursuant to Section 317 of the Charter, the Council shall publicly meet in both legislative sessions and business meetings, as well as special *public* hearings to be held upon pending legislation and budget matters. Pursuant to Article 25, Section 5 of the Annotated Code of Maryland,[2] the Council may also meet informally solely for the purpose of discussing the administrative affairs of the legislative branch, such as screening and selection of employees of the Council and members of boards appointed by the Council; formulating estimates of budget monies required for the operation of the legislative branch; and handling personnel problems; provided, however, that no final determinations will be made

---

2. "All meetings, regular and special, of the board of county commissioners or of the county council of any county in this State, shall be public meetings and open to the public at all times. Nothing contained herein shall be construed to prevent any such board or council from holding an executive session from which the public is excluded but no ordinance, resolution, rule or regulation shall be finally adopted at such an executive session."

except during a duly called public meeting or session."

\* \* \*

"103 *LOCATION OF MEETINGS* All *meetings* shall be held in Upper Marlboro unless otherwise designated. *Public hearings* on legislative matters shall be held in Upper Marlboro unless otherwise designated." (Emphasis added.)

\* \* \*

"12. *SPECIAL HEARINGS*

"1201 *GENERAL* The rules of this section apply to special hearings held upon pending legislation and the budget, *and to general public hearings.*
[Emphasis added.]

"1202 *PRELIMINARY ACTION* Upon convening the hearing, the presiding officer shall give a brief explanation of the purpose of the hearing and shall cause to be presented any information or data which is required before public discussion and comments begin.

"1203 *INFORMATION FROM PUBLIC* Each member of the public who wishes to speak should, after recognition by the presiding officer, come forth and state the following information:

    A. Name
    B. Home address
    C. Person or organization he represents, or that he is speaking as a private citizen
    D. Whether he is speaking for or against the matter on hearing
    E. Subject matter of his remarks

"1204 *QUESTIONS* Any member, upon recognition by the Chair, may briefly question any speaker.

"13. *RULE CHANGES AND SUPPLEMENTS*
* * *

"1303 *ROBERTS RULES OF ORDER*
The rules of parliamentary practice and procedures as set forth in Roberts Rules of Order shall govern the County Council in all matters not provided for in these rules and in the Charter."

Section 39 of *Roberts Rules of Order Newly Revised* (1970) is as follows:

"*Debate* on a question already pending can be allowed to continue at length after a quorum is no longer present, however, until a member raises the point."

How many members, and in what circumstances, shall constitute a quorum of the Council is clearly an item to which the framers of the charter gave careful attention. For the "transaction of business" a majority of the full Council is required but for an emergency legislative session two-thirds of the full Council is required. To reject certain appointments made by the executive requires the vote of two-thirds of the members of the full Council. On the other hand, appointments by the executive to a board or commission, as is the case here, can be rejected by a "vote of a majority of the full Council." But we have not found, nor have we been shown, anything in the charter or the Council's rules of procedure suggesting what should be a quorum for public hearings or, indeed, whether, at such hearings, there is any need for a quorum. Nor, as we have said, can the requirement of a quorum be achieved by insisting that business was transacted at the public hearing held on 27 July. The "business" was "transacted" at the meeting of the Council held on 4 August. One would be grossly obtuse not to perceive that the real purpose of the public hearing required by Section 322 of the charter is to give the citizenry an uninhibited opportunity to voice their approval or to vent their um-

brage in respect of one or more of the nominees. No finding of fact was required, no decision needed to be made, nor did any subsequent determination have to be based on or be supported by what transpired at the hearing. The members of the Council were free to vote for or against any nominee for any reason or for no reason. In fact the Council could have chosen to do nothing. Section 322 provides that "[i]f the Council fails to act to confirm or reject such appointments within thirty days * * * [it] shall stand approved."

Whether the public hearings required by Section 322 should be presided over by six members of the Council, or four members, or one member, or a hearing officer appointed for the purpose we shall not undertake to say. We hold only that, in the circumstances, the absences of Reeder did not invalidate the rejection, on 4 August, of Gemeny's appointment. However, we think it is reasonable to expect that the Council, in the interest of orderly procedure, may wish to amend its rules of procedure in this regard.

While neither side has made much of Section 39 of *Roberts Rules, supra,* it seems to us that this may well be dispositive of Gemeny's contention. The hearing in the case at bar at no time rose to the level of a debate which would seem to make Section 39 all the more applicable here. The record establishes that none of the five members who remained in the hearing room while Reeder was out suggested the absence of a quorum. Neither did Gemeny nor the other nominees. Certainly none of the citizens present voiced objection. Perhaps it would not be unfair to say it never occurred to anyone present in the hearing room that a quorum might be lacking, or that a quorum might be essential, or, indeed, how many were needed to constitute a quorum which, of course, is simply another way of saying that Gemeny's contention is something of an afterthought.

Gemeny leans heavily on *Clark v. County Board of Appeals for Montgomery County,* 235 Md. 320 (1964). The concluding sentences of the opinion in *Clark* follow:

"*  *  * We think the cases holding that at least enough members to constitute a quorum for decision, be present at the public hearing, are more consistent with our construction of the ordinance in the instant case, and with our prior decisions. Accordingly, we hold that the Board's decision was improperly reached and the order must be reversed." *Id.* at 325.

But *Clark* must be viewed in the light of our comment in *Younkin v. Boltz,* 241 Md. 339, 344 (1966), which presented "a variation of the Clark factual situation." Judge Hammond (now Chief Judge) said, for the Court:

"This construction of the ordinance could well have been based on its language that 'action' by the Board must be taken by at least three members and the fact that the act of hearing the evidence in *Clark* was done by only two members. *In any event, we see no reason to extend the holding in Clark to a case not precisely similar on the facts.*" (Emphasis added.)

That the case at bar and *Clark* are "not precisely similar on the facts" is a dead certainty. Here there was no issue of fact to be resolved. Gemeny was not on trial. He was not confronted by witnesses giving evidence which might affect his liberty or his property. He did not have the burden of proving that his pecuniary worth, his political, social· or religious beliefs, his honesty or integrity, his professional competence or his partisan auspices measured up to established norms. There was literally nothing required of the members present except to sit and listen.

*Order affirmed.*
*Costs to be paid by the appellant.*