## BARRANCA ET AL. *v.* PRINCE GEORGE'S COUNTY, MARYLAND ET AL.

[No. 283, September Term, 1971.]

*Per Curiam Order January 20, 1972.*

*Opinion Filed February 17, 1972.*

## PER CURIAM ORDER

The Court, being of the opinion that the trial court was in error in its holding that appellants Salvatore Barranca and John J. McBurney were lawfully removed from office as Commissioners of the Washington Suburban Sanitary Commission and in its holding that the County Executive of Prince George's County is empowered to remove from office for cause without the concurrence of the County Council for Prince George's County any such Commissioner appointed from Prince George's County.

NOW, THEREFORE, it is this 20th day of January 1972 ORDERED by the Court of Appeals of Maryland for reasons to be stated in an opinion hereafter to be filed, that the orders appealed from are hereby reversed, and

It is FURTHER ORDERED that the costs be paid by Prince George's County and that the mandate issue forthwith.

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*James P. Salmon,* with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for Salvatore Barranca and John J. McBurney, part of appellants. *John B. Kenkel,* with whom were *J. Lloyd Niles* and *Charles M. Byrd* on the brief, for Washington Suburban Sanitary Commission, other appellant.

*Walter H. Maloney, Jr., County Attorney,* with whom was *Jess J. Smith, Associate County Attorney,* on the brief, for Prince George's County, Maryland, part of ap-

pellees. *James F. Vance* for Rhea H. Cohen, other appellee.

HAMMOND, C. J., delivered the opinion of the Court.

On January 20, 1972 we entered a per curiam order reversing the trial court in its holding that appellants, Salvatore Barranca and John J. McBurney, had been lawfully removed from the office of Commissioner of the Washington Suburban Sanitary Commission from Prince George's County and in its holding that the County Executive of Prince George's County is empowered to remove for cause, without the concurrence of the County Council, a commissioner from Prince George's County. Our reasons for so doing follow.

In June 1971 the four-year terms of Barranca and McBurney had expired but under the provisions of the Washington Suburban Sanitary District law (Sec. 1-1(a), Washington Suburban Sanitary District Code; Sec. 83-57(a), Code of Public Local Laws of Prince George's County (1963, 1968 ed.)), they continued as commissioners holding over until their successors were duly appointed. Prince George's County became a charter County in February 1971. In the summer of 1971 the County Executive, William Gullett, sought to have the County Council confirm the appointments of three persons as commissioners of the Washington Suburban Sanitary Commission from Prince George's County. One nominee was confirmed by the Council and two were rejected. See *Gemeny v. Prince George's County, Maryland,* 264 Md. 85, 285 A. 2d 602 (1972). Gullett elected not to submit further nominations but to attack frontally. On September 8 he mailed to Barranca and McBurney substantially identical letters advising each "to show cause if any you have, why you should not be removed from office" at a public hearing to be held on September 20. Gullett listed some eighteen specific alleged grounds for removal, which he characterized generally as "maladministration, inefficiency [and] lack of capacity to perform the functions

of your office * * *." Barranca wrote Gullett that the County Executive could not remove a district commissioner without the concurrence of the County Council. On September 17, the Washington Suburban Sanitary Commission obtained a court order restraining Gullett from holding his proposed removal hearing. On September 28, Judge Bowen dissolved the restraining order because the parties were "hopelessly miscast," and suggested that the proper parties would be Barranca and McBurney on one side and Prince George's County on the other. After Judge Bowen acted on September 28, Gullett wrote and had delivered to Barranca and McBurney a letter advising them that the removal hearing would be held the next day. Neither Barranca nor McBurney attended the hearing and Gullett simply announced publicly that they were then and there removed from office. The present suit for declaratory judgment, writ of mandamus and ancillary injunctive relief was filed the same day by Prince George's County and a taxpayer against Barranca, McBurney and Washington Suburban Sanitary Commission.

Messrs. Barranca and McBurney were appointed to the Commission on June 1, 1967 under the Washington Suburban Sanitary District law as enacted by Ch. 713 of the Laws of 1967. In pertinent part it provided for four-year terms, for appointments by the County Commissioners of Prince George's County of commissioners from that County, and said:

> "* * * the Board of County Commissioners for Prince George's County may remove for cause any respective member of the Commission appointed by said * * * Board prior to the expiration of the term * * *. In such a case, the cause for removal shall be stated in writing and a public hearing held thereon."

In 1971, after legislative revisions, the applicable provisions of the Washington Suburban Sanitary District law (Sec. 1-1 (a), (b), (c), Washington Suburban Sani-

tary District Code; Sec. 83-57, Subsections (a), (b) (i), and (c), Code of Public Local Laws of Prince George's County (1963, 1968 ed.)) read:

"For the purpose of carrying out the provisions of this subtitle, said Sanitary District shall be under the jurisdiction of a commission of six members known as the Washington Suburban Sanitary Commission, which in this subtitle may be referred to às 'the commission' or 'commission.' Three of the members of the commission shall be from Prince George's County, appointed by the board of county commissioners for Prince George's County, and three from Montgomery County, appointed by the county executive of Montgomery County, subject to the confirmation of the county council, with the respective appointments to be made as hereinafter provided. Each term of office is four years, which commenced or will commence on the first day of June in the year of appointment * * *

\* \* \*

"As used herein, the term 'county governing body' means the county executive with respect to Montgomery County and the board of county commissioners with respect to Prince George's County. The provisions for nominations, appointments, removal and hearing by the county governing body shall apply to, and be exercised by, the county executive for Montgomery County with respect to the members from that county, and shall apply to, and be exercised by, the county commissioners for Prince George's County with respect to the members of the commission from Prince George's County.

\* \* \*

"A county governing body may remove for cause, prior to the expiration of the term for

which a commission member was appointed, any member of the commission appointed by that county governing body. In such a case, the cause for removal shall be stated in writing and a public hearing held thereon. At such a hearing an opportunity shall be given to the commission member in question to present a defense in his or her own behalf. In Montgomery County, the removal of members of the commission by the county executive shall be subject to the approval of the county council. Any vacancy occurring in the membership of the commission for any reason shall be filed as provided in this section for the unexpired portion of the term."

The present differences of opinion between Messrs. Barranca and McBurney on the one hand, and Mr. Gullett on the other, flow from the fact that the "county governing body" of Prince George's County is no longer the Board of County Commissioners since that body was done away with by the adoption of the County Charter. Barranca and McBurney say the Board was replaced as the county governing body for the purposes of removal of a Washington Suburban Sanitary commissioner by the County Executive *and* the County Council, and Gullett says that as County Executive he alone can remove from office, since Sec. 507 of the County Charter, "Removal of Members of Boards and Commissions," provides: "* * * a member of any appointed board or commission may be removed from office by the County Executive * * *."

Judge Bowen rejected the basic premise of Prince George's County that the Washington Suburban Sanitary District law is a local law, ruling it to be a public general law. Under the flat holding in *Bowie v. Washington Suburban Sanitary Commission,* 249 Md. 611, and *Prince George's County v. Laurel,* 262 Md. 171, 188-190, he hardly could have ruled otherwise. It followed, said Judge Bowen, that the composition from time to time of the

Commission (whose members are State, rather than County, officers) and therefore the manner of appointment and removal of its members was governed by State law. In this determination he was on sound ground. The Charter itself recognizes this when in Sec. 507, in providing for removal of members of commissions, it says: "except for members of the Personnel Board * * * and except as provided for by State law * * *," a member of any appointed board or commission may be removed by the County Executive. More importantly, the Charter could not legally have provided for the removal of State officials, even though they are concerned with local affairs and interests. Article XI-A of the Constitution of Maryland spells out the means by which counties may adopt the charter form of local government and indicates the limitations on charter powers. Section (2) thereof provides:

> "The General Assembly at its first session after the adoption of this amendment shall by public general law provide a grant of express powers for such County or Counties as may thereafter form a charter under the provisions of this Article. Such express powers granted to the Counties and the powers heretofore granted to the City of Baltimore, as set forth in Article 4, Section 6, Public Local Laws of Maryland, shall not be enlarged or extended by any charter formed under the provisions of this Article, but such powers may be extended, modified, amended or repealed by the General Assembly."

The Express Powers Act, Code (1957, 1966 Repl. Vol.). Art. 25A, § 5(Q), authorizes a charter county:

> "To provide for the appointment and removal of all county officers except those whose appointment or election is provided for by the Constitution or public general law, and to establish a merit system, if deemed desirable, in connec-

tion with the appointment of all county officials
and employees not elected or appointed under
the Constitution and the public general laws."

Judge Bowen then found that the corporation known
as Prince George's County was the governing body as
that term is used in the germane parts of Washington
Suburban Sanitary District law. He noted that corporate
bodies must function by agents and that the corporate
body that is Prince George's County had by Sec. 507 of
its Charter designated the County Executive as the agent
to perform alone the task of removing unworthy public
officers. This is where Judge Bowen slipped, in our view.
The corporate body involved is the government of Prince
George's County, and before the Charter the Board of
County Commissioners governed. Under the Charter the
County Executive and the County Council govern. Sec-
tion 3 of Art. XI-A provides that every charter for a
county shall provide for an elective legislative body to
be known as the County Council, and adds:

"and all references in the Constitution and laws
of this State to the Mayor of Baltimore and City
Council of the City of Baltimore or to the County
Commissioners of the Counties, shall be con-
strued to refer to the Mayor of Baltimore and
City Council of the City of Baltimore and to the
President and County Council herein provided
for whenever such construction would be rea-
sonable."

Section 1104 of the Charter of Prince George's County
says: "All references in the Constitution and the laws of
this State to the County Commissioners shall * * * be
construed to refer to the Council and to the County Ex-
ecutive whenever such construction would be reason-
able." The Washington Suburban Sanitary District law
as to removal of Prince George's County Commissioners
equates "the governing body of the County" with "the
County Commissioners." The Constitution and the Char-

ter equate "the County Commissioners" and "the County Executive and the County Council" whenever such equation would be reasonable. It could hardly be said to be unreasonable in the present instance. The legislature provided in Sec. 1-1(c) of the Washington Suburban Sanitary District Code that: "In Montgomery County the removal of members of the Commission by the County Executive shall be subject to the approval of the county council." If this procedure was legislatively deemed appropriate for Montgomery County, why would it be unreasonable to find such a result required for Prince George's County. The procedure is not novel or extremely unusual. See McQuillin, *Municipal Corporations* (Third ed., 1968), § 12.233c (pp. 237-238):

> "Power to remove municipal officers may be, and sometimes is, conferred upon two or more authorities, e. g., the mayor and the city council, in which case the jurisdiction of each may be consistent and concurrent. If the law requires the action of two or more agencies, as an executive officer and a board, or the mayor and council, neither agency alone may exercise the power without the concurrence of the other."

Appellees argue that the removal of public officials inherently is an executive act and that the Charter preserves the doctrine of separation of governmental powers. They say: "there is no reason to [suppose] that the General Assembly is less sensitive to traditional American practice respecting removal of public officials." [1] To buttress the separation of powers argument, appellees cite *Myers v. United States,* 272 U. S. 52, 71 L. Ed. 160, which held that the President of the United States, without congressional approval, could remove a postmaster whose appointment had been subject to confirmation by

---

1. We have noted that the General Assembly was demonstrably "less sensitive" to tradition—if the tradition is as appellees assert—when it explicitly provided for Montgomery County removal by both the Chief Executive and the County Council.

the Senate, despite clear statutory language inhibiting the President's exclusive right of summary removal. The basis of the decision was that the legislative requirement of legislative approval of a removal was an unconstitutional invasion of the executive powers of the President. The short answer to these arguments is, to use the words of Judge Markell for the Court in *Pressman v. D'Alesandro*, 193 Md. 672, 679 (quoted with approval in *Turf Valley v. Zoning Board*, 262 Md. 632, 642) :

> "The constitutional requirement of separation of powers is not applicable to local government. * * * Just how much power is granted by a particular statute is a question of statutory construction * * * not a constitutional question."

In the case before us a proper and perceptive reading of the relevant constitutional and statutory provisions requires a finding that the power of removal for cause of a Prince George's County commissioner lies in the hands of both the County Executive and the County Council. We see no reason why "the traditional American practice" that the executive proposes and the legislature disposes should not be applicable under State law both to appointments to and removal from the office of commissioners from Prince George's County.