822 A.2d 429

**MONTGOMERY COUNTY, Maryland, et al.**

v.

**ANCHOR INN SEAFOOD RESTAURANT, et al.**

No. 91, Sept. Term, 2000.

Court of Appeals of Maryland.

May 2, 2003.

328

Judson P. Garrett, Jr., Associate County Atty., Marc P. Hansen, Associate County Atty. (Charles W. Thompson, Jr., County Atty., Karen L. Federman Henry, Associate County. Atty., on brief), Rockville, J. Joseph Curran, Jr., Atty. Gen. of

Maryland, Robert A. Zarnoch, Kathryn M. Rowe, Asst. Attys. Gen., Annapolis, for petitioners.

Stanley D. Abrams (Cathy G. Borten, on brief) of Bethesda, Eric S. Jaffe, Washington, DC, Robert W. Keene, Jr., Rachel T. McGuckian, Rockville, for respondents.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

ELDRIDGE, J.

We issued a writ of certiorari in this case to determine the validity of a Montgomery County regulation that prohibits smoking in eating and drinking establishments other than private clubs. We shall hold that the regulation is invalid.

## I.

On January 19, 1999, Bill No. 2–99, banning smoking in licensed bars and restaurants in Montgomery County, was introduced in the Montgomery County Council. Following a hearing, the bill passed by a five to four vote and was delivered to the County Executive, who vetoed it. On the same date that the bill was passed, the County Council purported to convene as the Board of Health and considered adopting, by resolution, a regulation that mirrored Bill No. 2–99. Resolution 14–70 was adopted on March 9, 1999, to take effect on January 1, 2002. It provided, in pertinent part, as follows:

### "Smoking in eating and drinking establishments

(a) **Smoking Prohibited.** A person must not smoke any tobacco product in any eating and drinking establishment licensed under Chapter 15 of the County Code. The owner or person in control of the establishment must refuse to serve or seat any person who smokes, and must direct the person to leave if the person continues to smoke after proper warning.

\*       \*       \*

"(b) **Exception.** This regulation does not apply in the bar or dining area of any eating and drinking establishment that:

(1) is a club as defined in the state alcoholic beverages law,

(2) has an alcoholic beverages license issued to private clubs under the state alcoholic beverages law, and

(3) allows consumption of alcoholic beverages on its premises."

The purported legal basis for Resolution 14–70 was set forth in the Resolution, and states in pertinent part as follows:

"Maryland Code Health–General Article § 3–202(d) authorizes the County Council, sitting as the County Board of Health, to adopt rules and regulations regarding any nuisance or cause of disease in the County."

Following the adoption of the Resolution, the respondents, Anchor Inn Seafood Restaurant, numerous other restaurants located in Montgomery County, restaurant owners and employers (collectively referred to as "Anchor Inn") and the City of Gaithersburg, filed in the Circuit Court for Montgomery County these declaratory judgment actions challenging the validity of the Resolution. After cross-motions for summary judgment, the Circuit Court entered a judgment declaring the Resolution invalid. In a separate opinion accompanying the declaration that the Resolution was invalid, the Circuit Court delineated five alternative grounds for its decision. First, the court held that, under state law, the County Council did not have the authority to sit as the Board of Health without the participation of the County Executive. Second, the Circuit Court held that the Resolution was preempted by Maryland Code (1992, 1998 Repl.Vol.), § 2–105(d) of the Business Regulation Article. Third, the court concluded that the County Council, purporting to sit as an administrative agency, failed to comply with the Montgomery County Administrative Procedure Act. Fourth, the court took the position that the Resolution violated the separation of powers provisions in the Montgomery County Charter. Fifth, the Circuit Court held that the Resolution violated the Equal Protection Clause of the

Fourteenth Amendment to the United States Constitution and the equal protection principle embodied in Article 24 of the Maryland Declaration of Rights.

Montgomery County filed a notice of appeal to the Court of Special Appeals, and then petitioned this Court for a writ of certiorari prior to any proceedings in the Court of Special Appeals. We granted the certiorari petition, *Montgomery County v. Anchor Inn*, 361 Md. 433, 761 A.2d 932 (2000), and we shall affirm.

## II.

We fully agree with the first ground relied upon by the Circuit Court for holding the Resolution invalid, namely that, under state law, the Montgomery County Council did not have the authority to act as the Board of Health without the participation of the County Executive. Consequently, we need not and shall not express any opinion with respect to the other alternative grounds relied upon in the Circuit Court's opinion.

Article XI–A of the Maryland Constitution authorizes counties to adopt home rule charters which, as we have often pointed out, function as "constitutions" for the counties adopting them. *Save Our Streets v. Mitchell*, 357 Md. 237, 248, 743 A.2d 748, 754 (2000), and cases there cited. Section 3 of Article XI–A mandates that a county adopting a home rule charter must select one of two types of government: (1) an elective legislative body known as the County Council without an elected County Executive or (2) an elective County Council plus an elective County Executive.[1]

---

1. Article XI–A, § 3, provides in part as follows:

   "Every charter so formed shall provide for an elective legislative body in which shall be vested the law-making power of said City or County. Such legislative body in the City of Baltimore shall be known as the City Council of the City of Baltimore, and in any county shall be known as the County Council of the County. The chief executive officer, if any such charter shall provide for the election of such executive officer, or the presiding officer of said legislative body, if such charter shall not provide for the election of a chief executive officer, shall be known in the City of Baltimore as Mayor of Balti-

In accordance with Article XI–A of the Constitution, Montgomery County adopted in 1948 a home rule charter. In this original charter, Montgomery County opted for the system having no county executive and where the elected County Council comprised the governing body, having both legislative and executive powers. The original Charter, in Art. III, §§ 2 and 3, declared that the Council was the "chief executive authority" and vested the Council with "all powers of the Board of County Commissioners, or any of them, as a local board of health." In 1965, the County Council by ordinance again designated itself as the local Board of Health.

In 1968, however, Montgomery County adopted a new charter, effective in 1970, which provided for the other type of government authorized by Article XI–A of the Maryland Constitution, with a county executive and a separation of the county government into legislative and executive branches. *See Eggert v. Montgomery County Council*, 263 Md. 243, 256–260, 282 A.2d 474, 480–482 (1971), where this Court discussed the new charter and the Montgomery County Council's invalid efforts to exercise executive powers under the new charter.

The Maryland General Assembly, as early as 1886, has authorized the governing bodies of counties, which were then county commissioners in all counties, to constitute the county boards of health. Ch. 22, § 2, of the Acts of 1886 stated that

"the Board of County Commissioners of the several counties in this State shall, ex-officio, constitute a Local Board of Health for their respective counties, and shall have and exercise all the duties of a Board of Health, as provided in this act...."

------

more, and in any County as the President or Chairman of the County Council of the County, and *all references in the Constitution and laws of this State* to the Mayor of Baltimore and City Council of the City of Baltimore or *to the County Commissioners of the Counties, shall be construed to refer to the* Mayor of Baltimore and City Council of the City of Baltimore and to the *President or Chairman and County Council herein provided for* whenever such construction would be reasonable..." (Emphasis supplied).

In December 1970 and thereafter, when Montgomery County's new charter went into effect, the state statute was virtually the same as when it was enacted in 1886. Maryland Code (1957, 1971 Repl. Vol.), Art. 43, § 45, provided in relevant part as follows:

> "The board of county commissioners of the several counties in this State shall, ex officio, constitute a local board of health for their respective counties and shall have and exercise all the duties of a board of health as provided in this article except in cases where the charter of any city or town in the State contains provisions inconsistent therewith." [2]

As reenacted and recodified by Ch. 21, § 2, of the Acts of 1982, Maryland Code (1982, 2000 Repl.Vol.), § 3–201 of the Health–General Article, the provision now reads as follows:

" § 3–201.  **County governing body or designated board.**

(a) *In general.*—Except as provided in subsection (b) of this section, the governing body of a county is ex officio the board of health for the county.

(b) *Code or charter county.*—In a code county or charter county, the governing body is ex officio the board of health for the county, unless the governing body establishes a board of health."

Montgomery County has not by ordinance established a separate entity as a Board of Health. Accordingly, the critical issue in this case is whether the "governing body" of Montgomery County, for purposes of § 3–201 of the Health–General Article, is the County Council alone, or is the County Council and County Executive together.

It is clear that, after 1948 and until the latter part of 1970, the County Council of Montgomery County constituted the local Board of Health. The 1948 Charter provision and the

---

**2.** There was a limited exception for Montgomery County in the second paragraph of the statute, but the exception concerned only chartered municipalities within the County.

1965 ordinance, designating the County Council alone as the Board of Health, were consistent with former Art. 43, § 45; providing that the County Commissioners constituted the local Board of Health. Under the explicit language of Article XI–A, § 3, of the Maryland Constitution, the reference to the Board of County Commissioners in the state statute should "be construed to refer to the ... County Council herein provided for...." From 1948 until December 1970, the County Council of Montgomery County was the "governing body" of Montgomery County.

From and after December 1970, however, when the new Montgomery County Charter went into effect, the County Council alone was clearly no longer the local Board of Health. The adoption of the County Executive—County Council form of local government was a major change with obvious consequences for future enactments. Under Article XI–A, § 3, of the Maryland Constitution, the language in Art. 43, § 45, of the Maryland Code, referring to the "Board of County Commissioners," meant the County Council and County Executive together.

In *County Council v. Supervisor,* 274 Md. 116, 117, 332 A.2d 897, 898 (1975), this Court held that "the County Council of Montgomery County is not synonymous with the term 'county commissioners'." In reviewing the provisions of Art. XI–A of the Maryland Constitution, in a charter county, we held that the corporate body of Montgomery County comprises the Executive and the Council together, as the successor to the former county commissioners. Judge Smith explained for the Court (274 Md. at 123, 332 A.2d at 900–901):

"When one considers the fact that at the time of the adoption of Art. XI–A the corporate name of the City of Baltimore was 'Mayor and City Council of Baltimore,' that by the provisions of Art. 25, § 1 county commissioners of each county are 'declared to be a corporation,' that one would hardly expect to call the chief executive officer of a county 'mayor,' and the words 'President and County Council' are an approximation of 'Mayor of Baltimore and City Council of the City of Baltimore,' it becomes obvious to us

that the intent of the framers of the amendment was to refer to the county in its corporate capacity, by whatever name it might ultimately be known upon the adoption of a charter. Accordingly, we conclude that it is the corporate entity of Montgomery County, Maryland, so known in its charter, which is vested with the right of appeal . . . in lieu of the prior corporate entity, the County Commissioners of Montgomery County."

Earlier, in *Barranca v. Prince George's County*, 264 Md. 562, 287 A.2d 286 (1972), we held that the County Executive and the County Council together comprised the corporate governing body of Prince George's County. In that case, the County Executive claimed to have the authority to act alone to remove a Prince George's County member of the Washington Suburban Sanitary Commission from office. We held that the "power of removal . . . lies in the hands of both the County Executive and the County Council," when the relevant statute vested the authority in the corporate body. *Barranca v. Prince George's County, supra,* 264 Md. at 571, 287 A.2d at 291.

Moreover, this Court has consistently taken the position that, with respect to home rule counties with both an executive and a council, the reference to "governing body" of a county, without further definition, means the executive and council together. Thus, in *County Council of Harford County v. Maryland Reclamation Associates*, 328 Md. 229, 614 A.2d 78 (1992), we held that the Harford County Council acting by itself was not the "governing body" of the county. The County Council in that case, as in the instant case, purported to adopt a regulation without the participation of the County Executive. The Harford County Council argued that "the provisions of Maryland Code (1982, 1987 Repl.Vol., 1992 Cum. Supp.), §§ 9–501 through 9–521 of the Environment Article, authorize[d] the 'County Council' itself to adopt, review, revise and amend Harford County's Solid Waste Management Plan." *County Council of Harford County v. Maryland Reclamation Associates, supra,* 328 Md. at 234, 614 A.2d. at 81. But the state statute granted the authority to the "county governing

body," not the Council. As we pointed out, 328 Md. at 236 n. 3, 614 A.2d at 82 n. 3, even though the Environment Article did not define the term "county governing body," the

> "Legislature elsewhere has defined the term to mean, in a charter county, the council and executive together. *See, e.g.,* Code (1974, 1990 Repl.Vol.), § 8–701(d) of the Natural Resources Article (' "Governing body" means the county commissioners, county executive and county council of any county . . .'); Code (1978, 1989 Repl.Vol.), § 5–102(c)(1) of the Education Article ('county governing body . . . consists of a county executive and county council')."

Accordingly, we held that the Council, acting alone, without the participation of the County Executive, lacked the authority to adopt or amend the County's Solid Waste Management Plan.

No ordinance passed by the Montgomery County Council and signed by the Montgomery County Executive has created a separate Board of Health for Montgomery County. Consequently, under § 3–201 of the Health–General Article of the Maryland Code, the "governing body" of Montgomery County is the local Board of Health. After 1970, the governing body has consisted of the County Council and County Executive together, and not the Council acting alone. Since the challenged Resolution was passed by the Council acting alone, it is invalid.

*JUDGMENT AFFIRMED, WITH COSTS.*