Dear Mr. Berlage:
You have advised that the Maryland-National Capital Park and Planning Commission ("MNCPPC") and Montgomery County are considering a proposed mutual aid agreement to extend the jurisdiction of the Park Police outside park property within Montgomery County. You ask for our opinion on the proper method for the Montgomery County Council to approve the proposed agreement. In particular, you ask whether the County must approve the proposed agreement by a law or by a resolution of the County Council.
In our opinion, the County may enter into the mutual aid agreement by enacting a law approving the agreement or by taking other appropriate action under County law that involves the participation of both the County Executive and the County Council. Approval by a resolution of the County Council alone would not suffice.
 I Jurisdiction of Park Police
The MNCPPC's enabling legislation authorizes it to establish a police force "to provide protection for the [MNCPPC]'s activities and property." Annotated Code of Maryland, Article 28, § 5-114(a). The Park Police are also "to prevent crime, apprehend criminals, enforce the criminal and motor vehicle laws of the State, enforce park regulations and perform whatever other related duties" are required by MNCPPC. Id.
As a general rule, the Park Police share concurrent jurisdiction with the Montgomery and Prince George's county police within the parks and other areas under the jurisdiction of the MNCPPC. Article 28, § 5-114(a). Under Annotated Code of Maryland, Criminal Procedure Article ("CP"), § 2-105, the Park Police may be given additional jurisdiction outside park property through a mutual aid agreement Id. The MNCPPC may not expand its police force in Montgomery and Prince George's counties beyond what is needed to protect its own activities and property, unless the expansion is authorized under a mutual aid agreement. See Chapter 542, Laws of Maryland 2002.
 II Mutual Aid Agreements
As a general rule, a police officer may exercise police powers only in the geographical area of the officer's agency. Stevenson v. State,287 Md. 504, 509, 413 A.2d 1340 (1980). The General Assembly has expanded the extra-territorial authority of law enforcement officers under certain circumstances. See 89 Opinions of the Attorney General 66 (2004).
For example, under CP § 2-105, it has authorized police officers to exercise extra — territorial jurisdiction in accordance with mutual aid agreements. That statute authorizes counties, municipalities, and the MNCPPC to enter into mutual aid agreements with other political subdivisions to provide personnel, including police officers, for mutual assistance. Pertinent to your question, the statute provides that the MNCPPC "may make a reciprocal agreement for the period that it considers advisable with . . . a county . . . and establish and carry out a plan to provide mutual aid by providing its police officers and other officers . . . together with all necessary equipment as provided in [CP § 2-105(b)]." CP § 2-105(e)(1).[1] The cross-referenced section provides, in relevant part:
 By action as in the regular routine for legislative enactment, the governing body of a county . . . may determine the circumstances under which the police officers . . . of the county . . . may lawfully go . . . beyond the boundaries of the county . . . to any place within or outside the State.
CP § 2-105(b) (emphasis added). For purposes of this section, "governing body"of a charter county with a county executive (such as Montgomery County) is defined as the county executive and county council. CP § 2-105(a).
 III Analysis
Your inquiry concerns what action Montgomery County must take to enter into a mutual aid agreement with the MNCPPC.
Under CP § 2-105(e)(1), it is the "governing body" of the county that may enter into an agreement with the MNCPPC. By definition, the governing body of Montgomery County is the County Executive and the County Council. CP § 2-105(a); see also Montgomery County v. Anchor Inn Seafood Restaurant, 374 Md. 327, 335,822 A.2d 429 (2003) (even in the absence of a statutory definition, the "governing body" of Montgomery County consists of county executive and county council). Thus, the mechanism used by the County to enter into an agreement must involve both the Executive and the Council.
As noted above, CP § 2-105(b) requires the governing body of a county to take action "in the regular routine for legislative enactment."[2] However, that type of action is required for a county to authorize its own police officers to "lawfully go . . . beyond the boundaries of the county. . . ." In the context of an agreement with the MNCPPC, the Montgomery County police already have concurrent jurisdiction on park property. Article 28, § 5-114(a) ("The Montgomery . . . County police have the same general police jurisdiction . . . within the parks and other areas and buildings under the [MNCPPC]'s jurisdiction as they have elsewhere in [the county]"). As we understand it, the proposed mutual aid agreement would not authorize Montgomery County police to operate in any place where they do not already have jurisdiction. Rather, the effect of the agreement would be to authorize the Park Police to act in Montgomery County in areas and circumstances in which the Park Police would not otherwise have jurisdiction. Thus, although the agreement is not an "agreement" unless approved by Montgomery County governing body in some fashion, by its literal terms, CP § 2-105(b) does not mandate that Montgomery County approve the agreement by any particular device.[3]
Under the County Charter, enactment of an ordinance involves the participation of both the County Executive and the County Council. See Montgomery County Charter, §§ 111, 208. We also understand that the County Code allows for the County Executive to enter into certain mutual aid agreements subject to the approval of the County Council. Montgomery County Code, § 35-13.[4] In our view, either of these mechanisms would satisfy the requirement of CP § 2-105(e) that the County "governing body" enter into the agreement. On the other hand, a Council resolution alone that did not involve any action by the County Executive would not satisfy the terms of the statute.
 IV Conclusion
In our opinion, the County may enter into the mutual aid agreement by enacting a law approving the agreement or by taking other action that involves the participation of both the County Executive and the County Council. Approval by a resolution of the County Council alone would not suffice.
Very truly yours,
 _____________________ J. Joseph Curran, Jr. Attorney General
 _____________________ Robert N. McDonald Chief Counsel Opinions Advice
[1] The statute also requires that any mutual aid agreement involving the MNCPPC include specific waiver and indemnification provisions. CP § 2-105(e)(2). Other provisions of the statute address the extension of official immunities and authorize the purchase of insurance with respect to officers acting under a mutual aid agreement. CP § 2-105(c), (f).
[2] The statute does not further define the phrase "regular routine for legislative enactment."
[3] If a mutual aid agreement were to authorize the Montgomery County police to exercise law enforcement authority on park property in Prince George's County, a "legislative enactment" would be required for Montgomery County's assent to the agreement. In that event, enactment of a special ordinance or approval pursuant to § 35-13 of the Montgomery County Code — itself a legislative enactment — would satisfy the requirement. However, § 35-13 would likely have to be amended for that purpose. See footnote 4 below.
[4] The County Attorney has advised that § 35-13 currently applies only to mutual aid agreements with counties, municipalities, and the District of Columbia, but would need to be amended to cover an agreement with the MNCPPC. As is our usual practice, we defer to the opinion of the County Attorney on this question of local law. *Page 98