CENTRAL COLLECTION UNIT, STATE OF MARYLAND
*v.* ATLANTIC CONTAINER LINE, LTD.

[No. 168, September Term, 1975.]

*Decided May 5, 1976.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Frank J. Blair,* Assistant Attorney General, with whom was *Francis B. Burch,* Attorney General, on the brief, for appellant.

*Robert L. Ferguson, Jr.,* with whom were *Allen, Thieblot & Alexander* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

The Central Collection Unit of the State of Maryland (the State)[1] brought suit in the Circuit Court for Baltimore County against Atlantic Container Line, Ltd. (Atlantic) for damages allegedly sustained at the Dundalk Marine Terminal of the Maryland Port Administration when Atlantic encroached on a storage area adjacent to that which it leased and placed thereon storage containers which exceeded the weight which the adjacent area had been designed to support.

Because the alleged damage was sustained in April and May of 1971, but suit was not instituted until April of 1975, Atlantic specially pleaded limitations and moved for summary judgment in its favor.[2] The trial court granted Atlantic's motion for a summary judgment, and this appeal was taken to the Court of Special Appeals from a judgment for costs entered in Atlantic's favor against the State. We granted certiorari before the case was heard in that court.

The question which is squarely raised by this appeal is whether the doctrine of sovereign immunity precludes a defendant's assertion of limitations as a defense to an action brought by the State in its sovereign capacity.

We begin our discussion with a reference to 21 James 1, c. 16 (1623), from which our statute of limitations is derived.

---

1. See Maryland Code (1957, 1973 Repl. Vol., 1975 Cum. Supp.) Art. 41, § 71 (c-1).

2. Code (1974), Courts and Judicial Proceedings Article § 5-101 provides, in part, that "a civil action at law shall be filed within three years from the date it accrues . . . ."

This was in force in Maryland, *Calvert v. Eden,* 2 H. & McH. 279 (1789), in its entirety until at least 1715 when it was first modified, *Pancoast v. Addison,* 1 H. & J. 350 (1802). See 2 Alexander's British Statutes 599 (Coe ed. 1912); Chapter 23, § 2 of the Laws of 1715; Chapter 24, §§ 21, 22 of the Laws of 1729. It is the progenitor of Maryland Code (1974), Courts and Judicial Proceedings Article § 5-101 (action at law); § 5-102 (action on specialty), and § 5-103 (adverse possession). *See also Roland Electrical Co. v. Black,* 163 F. 2d 417, 423-24 (4th Cir. 1947); Note, *Maryland Statutes of Limitations,* 8 Md. L. Rev. 294 (1944).

Early on, our predecessors recognized that limitations on a specialty could not be asserted against the King or the Lord Proprietor, *Carvill v. Griffith,* 1 H. & McH. 297, 311 (1769); and that after the Declaration of Independence, the State succeeded to the King's sovereignty; and that upon grant of a portion of this sovereignty to the United States, limitations could not be asserted against the United States in the courts of this State, although limitations would not be a bar in a United States court, *Swearingen v. United States,* 11 G. & J. 373 (1841).

While the issue has been infrequently raised, there is a line of authority, not cited by the State, which supports the notion that limitations may not be asserted against the State when, in its sovereign capacity, it sues in its own courts. For example, in *American Bonding Co. v. National Mechanics Bank,* 97 Md. 598, 55 A. 395 (1903), the State had recovered a judgment for $4,951.80 against the bonding company as surety on the official bond of a court clerk, because of the failure of the clerk to account to the State for interest received by him on funds collected in his official capacity.

When the bonding company, having been subrogated to the State's rights, brought suit against the bank for the recovery of interest in the amount of $3,774.70 paid by that bank, the latter set up the defense of estoppel. In reversing judgment entered in the bank's favor, the Court concluded:

"The appellant [the bonding company] being

subrogated to the right of the State in respect to its claim against the appellee [the bank] is entitled to the benefit of every right, lien and security which existed in favor of the State in reference to the claim. Among these may properly be classed the State's exemption from the running of limitations against it." 97 Md. at 607.

To the same effect is *Orem v. Wrightson,* 51 Md. 34 (1879) upholding a subrogee's entitlement to the State's right of priority. *See,* however, *Gloyd v. Talbott,* 221 Md. 179, 186, 156 A. 2d 665, 668 (1959) holding that limitations will run in a derivative action brought by a taxpayer of a municipality against town officials.

This is but an application of the maxim, *nullum tempus occurrit regi,*[3] another example of which may be found in the law of adverse possession, which is derived from Section 1 of 21 James 1, c. 16 (1623). In Maryland, there has never been any doubt that adverse possession does not run against the State, *Hall v. Gittings,* 2 H. & J. 112, 114 (1806); *Bond v. Murray,* 118 Md. 445, 452-53, 84 A. 655, 658-59 (1912) (property held under grant from State cannot be acquired by adverse possession). However, the rule, as applied to political subdivisions, is ordinarily limited to land held in a governmental capacity or for public use, *Siejack v. City of Baltimore,* 270 Md. 640, 644, 313 A. 2d 843, 846 (1974); *Desch v. Knox,* 253 Md. 307, 312, 252 A. 2d 815, 818 (1969); *City of Baltimore v. Chesapeake Marine Ry. Co.,* 233 Md. 559, 572, 197 A. 2d 821, 827 (1964).

The Attorney General has consistently ruled that the principle that limitations may not be asserted against the State, acting in its sovereign capacity, unless permitted by statute, prevents a defense on this ground in an action

---

**3.** "Time does not run against the king. The rule refers to the king in his official capacity as representing the sovereignty of the nation and not to the king as an individual." Black's Law Dictionary 1217 (rev. 4th ed. 1968).

See Ulman v. Charles St. Ave. Co., 83 Md. 130, 145, 34 A. 366, 369 (1896) (dictum), which quotes Tainter v. Mayor of Morristown, 19 N.J. Eq. 46, 59-60 (1868): ". . . It is well settled that time does not run against the State, or the public, by analogy to the Statute of Limitations against individuals, but only where the State or public are expressly included."

brought by the State for the collection of taxes, 32 Op. Att'y Gen. 431 (1947); 22 Op. Att'y Gen. 652 (1937); 19 Op. Att'y Gen. 505 (1934); 15 Op. Att'y Gen. 317 (1930); 10 Op. Att'y Gen. 284 (1925). *State v. Cadwalader,* 227 Md. 21, 24, 174 A. 2d 786, 787 (1961), however, dealt with a four year statute of limitations applicable to the collection of all state, county or city taxes.

We have considered this matter at some length, in order to distinguish *Goldberg v. Howard County Welfare Bd.,* 260 Md. 351, 272 A. 2d 397 (1971), upon which Atlantic relies. There, the Welfare Board brought suit in 1969 to recover some $9,314.09 in public assistance paid Harry L. Duvall between 1951 and 1969, and Messrs. Goldberg and Kane, trustees for Mr. Duvall, raised the defense of limitations. In *Goldberg,* we held that limitations were not a bar in an action in which a political subdivision was exercising a governmental function. It seems to us that Atlantic can derive small comfort from this. The distinction between the public, or governmental function, and the private, or proprietary right, which may be crucial in a suit brought by a political subdivision, has no more applicability in a suit brought by the State, in its capacity as sovereign, than it does in cases involving the assertion of adverse possession against the State.

> *Judgment reversed; case remanded for further proceedings; costs to abide the result.*