WASHINGTON SUBURBAN SANITARY COMMISSION
*v.* PRIDE HOMES, INC. ET AL.

[No. 10, September Term, 1981.]

*Decided October 15, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Roger C. Duncan* for appellant.

*James P. Salmon,* with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

We shall here hold that limitations do not run against the Washington Suburban Sanitary Commission because it is an agency of the State. Hence, we shall reverse the holding of the Court of Special Appeals in *Wash. Sub. San. Comm'n v. Pride Homes,* 47 Md. App. 390, 422 A.2d 1298 (1980).

Pride Homes, Inc., granted an easement to the Commission in 1968 "for the installation, construction, reconstruction, maintenance, repair, operation and inspection of a sanitary sewer and a water main and appurtenances thereto, including service connections within said easement," etc. The Commission sued Pride. It alleged that "subsequent to the construction of the Plaintiff's sewer line, but prior to February, 1975, the Defendant and its agents, servants and employees, did trespass and continues [sic] to trespass upon said right of way," that they "place[d] thereon vast quantities of earth to the depth of approximately 20 feet," and that these "deposits of earth caused the sewer line to buckle, deflect, fracture and collapse creating a stoppage causing sewage to overflow into [certain] residences . . . on or about February 1, 1975." An amended declaration was filed against Pride and certain individuals, who were officers of Pride, possibly as a result of extensive discovery.

The trial court and the Court of Special Appeals held that the Commission's claim is barred by the statute of limitations. The Commission contends that limitations do not run against it since it is an agency of the State.

The Commission was created by Chapter 122 of the Acts of 1918. It is charged with the duty of providing water and sewer service in the Washington Suburban Sanitary District, which comprises most of Prince George's and Montgomery Counties, the Maryland counties contiguous to the District of Columbia. We have taken pains to point out that it was created by a public general law. *See, e.g., Katz v. Washington Sub. San. Comm'n,* 284 Md. 503, 512, 397 A.2d 1027 (1979); *Barranca v. Prince George's Co.,* 264 Md. 562, 567-68, 287 A.2d 286 (1972) [1]; and *Bowie v. Wash. Sub. San. Comm'n,* 249 Md. 611, 615-16, 241 A.2d 396 (1968).

---

1. The Court of Special Appeals referred to the enactment by the General Assembly of "its local laws creating the WSSC from the counties involved . . . ." 47 Md. App. at 393. It thus is important to point out that in *Barranca v. Prince George's Co.,* 264 Md. 562, 287 A.2d 286 (1972), Chief Judge Hammond said for the Court:

"Judge Bowen rejected the basic premise of Prince George's County that the Washington Suburban Sanitary District law is a local law, ruling it to be a public general law. Under the flat holding in *Bowie*

In *Katz*, 284 Md. at 509-12, we specifically held the Commission to be a State agency, likening it to its "sister agency," the Maryland-National Capital Park and Planning Commission which we held in *O & B, Inc. v. Md.-Nat'l Cap. P. & P.*, 279 Md. 459, 466, 369 A.2d 553 (1977), to be "a state agency for the purpose of determining its right to invoke the doctrine of sovereign immunity." (For the term "sister agency" see *Md.-Nat'l Cap. P. & P. v. Mont. Co.*, 267 Md. 82, 90, 296 A.2d 692 (1972).) That holding was in no way inconsistent with our earlier decision in *Neuenschwander v. Wash. San. Comm.*, 187 Md. 67, 48 A.2d 593 (1946), which the Court of Special Appeals chided us for not having mentioned in *Katz*. The holding there, 187 Md. at 75, was that the Commission had sufficient of "[t]he attributes of a municipal corporation" to bring it within the provision of a statute applicable in certain counties which, as a prerequisite to suit in certain instances, required written notice within 90 days after an injury or damage was sustained.[2]

Although now somewhat modified since passage of Chapter 450, Acts of 1976, as to contracts, the doctrine of sovereign immunity prevails in Maryland.[3] *Katz*, 284 Md. at 507.

---

*v. Washington Suburban Sanitary Commission*, 249 Md. 611, and *Prince George's County v. Laurel*, 262 Md. 171, 188-90, he hardly could have ruled otherwise." *Id.* at 567.

**2.** The Commission in its brief refers to *Neuenschwander* as having been "legislatively overruled by the enactment of what is now codified as Chapter 1, Sec. 1 (h) of the WSSD Code providing that the Commission is *not* a municipal corporation under Article XI-E of the Constitution of Maryland." (Emphasis in original.) That statement is in error. The WSSC could not be a municipal corporation under Constitution, Article XI-E, which was adopted subsequent to *Neuenschwander*. As pointed out for the Court by Judge Levine in *Md.-Nat'l Cap. P. & P. v. Mont. Co.*, 267 Md. 82, 296 A.2d 692 (1972):

> "Article XI-E of the Constitution is entitled 'Municipal Corporations,' and it suffices to say, without quoting its many provisions, that, as used therein, the term 'municipal corporations' has a geographical connotation with a political body representative of and governing its inhabitants, and that it does not mean a governmental agency or commission, no matter how powerful or broad its functions may happen to be, and even though it is endowed with corporate status that generally permits it to sue or be sued." *Id.* at 89-90.

WSSC has never had power to govern.

**3.** Regardless of what it may be in other states, the doctrine of sovereign immunity is not judge-made law in this State. See *Austin v. City of*

Chief Judge Murphy pointed out for the Court in *Katz,* "Although originally based on the tenet that 'the King can do no wrong,' the doctrine is presently viewed as a rule of policy which protects the State from burdensome interference with its governmental functions and preserves its control over State agencies and funds." *Id.* at 507 (citing cases).

In *Central Coll. Unit v. Atl. Con. Line,* 277 Md. 626, 627, 356 A.2d 555 (1976), Judge Singley said for the Court, "The question which is squarely raised by this appeal is whether the doctrine of sovereign immunity precludes a defendant's assertion of limitations as a defense to an action brought by the State in its sovereign capacity." We held that it did. We considered the matter at some length in order to distinguish *Goldberg v. Howard Co. Welfare Bd.,* 260 Md. 351, 272 A.2d 397 (1971), upon which Atlantic relied. We held in *Goldberg* that limitations were not a bar in an action growing out of the exercise of a governmental function by a political subdivision of the State. 260 Md. at 358. A corollary to this rule was expressed by Judge McWilliams for the Court in *Siejack v. City of Baltimore,* 270 Md. 640, 644, 313 A.2d 843 (1974): "Quite likely nothing is more solidly established than the rule that title to property held by a municipal corporation in its governmental capacity, for a public use, cannot be acquired by adverse possession," citing a number of our prior cases. See, also, *Ulman v. Charles St. Ave. Co.,* 83 Md. 130, 144-45, 34 A. 366 (1896), and *Hall v. Gittings,* 2 H. & J. 112, 114 (1807), as to the State.

Pride has seized upon certain of our language in *Goldberg.* We there said, "We have no intention in this opinion of

*Baltimore,* 286 Md. 51, 69-70, 405 A.2d 255, 264-65 (1979) (Eldridge, J., concurring); *Calvert Associations v. Department,* 277 Md. 372, 376-77, 357 A.2d 839 (1976); and *State v. Baltimore & O.R.R.,* 34 Md. 344 (1871), *aff'd* 88 U.S. (21 Wall.) 456, 22 L. Ed. 678 (1875). We pointed out in *Calvert Associates* that, after repeal of Chapter 53 of the Acts of 1786 which had permitted suits against the State and its subdivisions, when the General Assembly desired settlement of the ongoing controversy concerning its obligations to St. John's College and Washington College, it passed a resolution authorizing proceedings calculated ultimately to obtain an opinion from this Court. This was the prelude to *St. John's College v. State,* 15 Md. 330 (1860).

reviewing all possible contingencies which may arise wherein limitations may or may not validly be interposed as a defense in a suit brought by a governmental agency or municipality." 260 Md. at 358. We quoted from 51 Am. Jur. 2d *Limitation of Actions* § 412 (1970) to the effect that where a distinction is recognized in actions by political subdivisions between those based upon "private" or "proprietary" rights and those based upon "public" or "governmental" rights, "the inquiry is whether the state, or its agency or subdivision, is asserting public rights on behalf of all the people of the state or merely private rights on behalf of a limited group." Pride regards this language as controlling here, claiming, "There is no question but that the plaintiff in *Goldberg* was a state agency and that the court was squarely presented with the question as to whether the proprietary-governmental distinction should be recognized." They fail to recognize the changes wrought by Chapter 148 of the Acts of 1967. That act rescinded the former provisions of Code (1957) Art. 88A, § 13 (a) which specified that each county welfare board was to "be an administrative department of the local government." It follows, accordingly, that Pride is in error in its reference to "the aforementioned *state* agency" as having been involved in *Donnally v. Welfare Board,* 200 Md. 534, 92 A.2d 354 (1952) (emphasis added). The holding of the Court there and in the predecessor case of *Montgomery Co., etc. v. Donnally,* 195 Md. 442, 73 A.2d 505 (1950), was that the provision of Maryland Code (1939) Art. 93, § 112 stating that "the creditor shall be forever barred" if suit were not filed against a personal representative within nine months after rejection of a claim by the personal representative "create[s] a statutory bar, as distinguished from a mere period of limitations, which may be waived. . . . Hence, it extinguishes the right to sue and not merely the remedy." 200 Md. at 540-41 (citing cases). It was pointed out in the course of the second opinion that where claims for reimbursement for such public assistance advanced had formerly been "accorded priority . . ., second only to funeral expenses," by Chapter 700 of the Acts of 1947, this was changed and such claims were "relegated to the

status of a common debt." 200 Md. at 541-42. The Court there rejected a contention "that the State can assert its right through the county board on the ground that the Board is exercising governmental powers of the State," and the attempt to "invoke[] the general rule that Statutes of Limitation do not run against the State unless the statutes expressly so provide." *Id.* at 542.

It is suggested that *Central Collection* "does not aid [the Commission] because this Court later held in *Katz* ... that the ... Commission had waived sovereign immunity." We did not hold that the *Commission* had waived sovereign immunity. In fact, it is doubtful whether the Commission as such could waive such immunity. *See, e.g., Bd. of Education v. Alcrymat Corp.,* 258 Md. 508, 513-16, 266 A.2d 349 (1970). We referred in *Katz* to Washington Suburban Sanitary District Code (1970) § 1-3 which provided that "[i]n the event of a judgment at law or in equity being recovered against said commission," then that Commission, "at the annual tax levying period of the county council of Montgomery County and the county commissioners of Prince George's County next succeeding the rendition of said judgment ... [was to] certify to said county council of Montgomery County and county commissioners of Prince George's County, a tax rate, in addition to that required for its interest, serial bonds and sinking fund requirements, that will, when levied and collected under the provisions of [that Code], produce an amount sufficient to satisfy said judgment ... including costs and counsel fees ...." [4] 284 Md. at 514. We said, "[A]

---

4. The Court of Special Appeals said in this case:

"[The Commission] is a hybrid body corporate conceived as a result of a ménage à trois and derived primarily from the legislative loins of Montgomery and Prince George's Counties. *See* Montgomery County, Md., Code ch. 86 (1972, 1977 Repl. Vol.) and Prince George's County, Md., Code App. I (1975 ed.). *See, also,* Washington Suburban Sanitary District (WSSD) Code (1970). It was not until 1971 that it was given the imprimatur of sovereign legitimacy when the WSSC Code was legalized by the General Assembly in 1971 Md. Laws, Ch. 115." 47 Md. App. at 392.

Chapter 115 of the Acts of 1971 did, indeed, provide that "the Washington Suburban Sanitary District Code, 1969 Edition, with the 1970 Supplement,

legislative waiver of sovereign immunity is ineffective unless specific legislative authority to sue the agency has been given, and unless there are funds available for the satisfaction of the judgment, or power reposed in the agency for the raising of funds necessary to satisfy a recovery against it." 284 Md. at 513 (citing cases). We pointed out that this provision of § 1-3 was not a part of the section as it was originally enacted, but was added by Chapter 506 of the Acts of 1927 in apparent response to the decision in *Washington Suburban Sanitary Commission v. Magruder,* 12 F.2d 832 (D.C. Cir. 1926), which held that although the Commission could "sue and be sued," it was nevertheless immune from suit because under § 1-3, as it then read, the Commission had no means to satisfy judgments in tort suits by reason of the fact it had no power to raise money for the purpose of paying damages. We concluded that the amendment was "a well-calculated and specific procedure to authorize the WSSC to acquire the funds necessary to satisfy a judgment rendered against it or to amicably settle threatened litigation." 284 Md. at 514-15. We said, "When read as a

---

published under the direction of the Washington Suburban Sanitary Commission by the Michie City Publications Company, Incorporated" should "be deemed and taken in all courts of the State, by the justices of the peace and trial magistrates of the State, and by all other public officials of the State and of its several political subdivisions, to be evidence of those public local laws in effect at the time of compilation of the Code or any supplement thereto." It made the enactments, erroneously labeled by the General Assembly as "public local laws," no different from what they had otherwise been. The enactments contained in the various volumes of the session laws are the law. Beginning in 1888, the only codes enacted as law have been the Code of Public General Laws of that year and the more recent editions of the code such as the Courts and Judicial Proceedings Article. Code (1974) § 10-201, Courts and Judicial Proceedings Article provides, "The 1957 Edition of the Annotated Code of Maryland, prepared and published by the Editorial Staff of The Michie Company, Charlottesville, Virginia, is adopted and made evidence of the Public General Laws of the State of Maryland" and is to "be considered as the evidence of the law in all courts of this state and by all public offices and officers of the state and its political subdivisions." That section further provides that the various replacement volumes and pocket supplements are to be considered as evidence of the law. Previously, it was customary, when a supplement to the Code was issued, to pass an act specifying that it was to be taken as evidence of the law. *See, e.g.,* Chapter 71 of the Acts of 1956 legalizing the 1956 Supplement to the 1951 edition of the Annotated Code. *See* also the discussion in *Brenner v. Plitt,* 182 Md. 348, 357-58, 361-62, 34 A.2d 853 (1943); *McDonagh v. Matthews-Howard Co.,* 160 Md. 264, 153 A. 47 (1931); and *De Murguiondo v. Frazier,* 63 Md. 94, 95 (1885).

whole, § 1-3 clearly expresses a legislative intent to waive the WSSC's sovereign immunity." *Id.* at 515. We observed that "[w]hether the county council actually imposes and collects the mandated tax is not determinative of the waiver of WSSC's sovereign immunity." *Id.*

As far back as *State v. Baltimore & O.R.R.,* 34 Md. 344, 374 (1871), *aff'd* 88 U.S. (21 Wall.) 456, 22 L. Ed. 678 (1875), Chief Judge Bartol said for this Court relative to sovereign immunity, "This immunity belongs to the State by reason of her prerogative as a sovereign, and on grounds of public policy." To similar effect see *Weyler v. Gibson,* 110 Md. 636, 654, 73 A. 261 (1909), and *State v. Wingert,* 132 Md. 605, 611, 104 A. 117 (1918). More recently, in *Chas. E. Brohawn & Bros. v. Board,* 269 Md. 164, 165-66, 304 A.2d 819 (1973), Judge Digges said for the Court, "By this doctrine, a litigant is precluded from asserting an otherwise meritorious cause of action against this sovereign State or one of its agencies which has inherited its sovereign attributes, unless expressly waived by statute or by a necessary inference from such a legislative enactment. *Godwin v. County Comm'rs of St. Mary's Co.,* 256 Md. 326, 260 A.2d 295 (1970); *Dunne v. State,* 162 Md. 274, 280, 159 A. 751 (1932)." In *Dunne v. State,* 162 Md. 274, 288-89, 159 A. 751, *appeal dismissed and cert. denied,* 287 U.S. 564 (1932), Judge W. Mitchell Digges put it a little differently for the Court, saying, "Courts should not hold that immunity from suit, one of the highest attributes of sovereignty, has been waived, except in cases of positive consent given, or by necessary and compelling implication." In *Davis v. State,* 183 Md. 385, 393, 37 A.2d 880 (1944), the Court held that the immunity of the State from suit is not modified by the Uniform Declaratory Judgments Act and, accordingly, that the trial court had properly sustained a demurrer filed by the Attorney General in an attempted suit against the State. Thus, waivers of immunity are to be strictly construed.

As we have indicated, the doctrine that limitations do not run against the State stems from the theory of sovereign immunity. Nowhere in the waiver, which we found in the statute in *Katz,* is there an indication of an intent to waive

the attribute of sovereignty relative to limitations. Although provision is made relative to judgment, it is a far cry from that in Code (1957, 1978 Repl. Vol.) Art. 41, § 10A (a), waiving the defense as to the State "and every officer, department, agency, board, commission, or other unit of State government" as to matters of contract. There, § 10A (d) provides that to implement the section "the Governor annually shall provide in the State budget adequate funds for the satisfaction of any final judgment . . . ." As we recognized in *Katz*, an individual may recover a judgment against the Commission but not be able to collect upon it because the county council may not see fit to put the funds in the budget. We said in *Montgomery Co. v. Met. District*, 202 Md. 293, 303, 96 A.2d 353 (1953), referring to property owned by a county, "Property which is held in a governmental capacity or is impressed with a public trust, cannot be disposed of without special statutory authority." Surely anything as essential to the health of a community as an adequate sewer line should be impressed with a public trust. We find that reasoning applicable here.

We have examined the out-of-state cases cited by Pride and find them inapposite. We hold that limitations are not a bar to a claim brought by the Commission.

> *Judgment of the Court of Special Appeals reversed and case remanded to that court for passage of an order reversing the judgment of the Circuit Court for Prince George's County; costs to abide the final result.*