490 A.2d 694

Arthur L. HARRISON, Sr.

v.

MOTOR VEHICLE ADMINISTRATION et al.

MOTOR VEHICLE ADMINISTRATION et al.

v.

Clifton Lewis THACKER.

Nos. 79, 84, Sept. Term, 1984.

Court of Appeals of Maryland.

April 10, 1985.

George Z. Petros, Marlow Heights (Fisher & Walcek, Marlow Heights, on the brief), for Harrison.

James W. Himes, Asst. Atty. Gen. of Annapolis, Baltimore (Stephen H. Sachs, Atty. Gen., Robert R. Smith, Romaine Williams, Asst. Attys. Gen., Baltimore, on the brief), for Motor Vehicle Admin.

Eugene E. Pitroff, Upper Marlboro, for Thacker.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

W. ALBERT MENCHINE, Associate Judge of the Court of Appeals (retired), Specially Assigned.

This litigation involves two separately filed cases in two circuit courts, each seeking the same relief—denied by one court—granted by the other.

### Case No. 1—(Harrison)

Arthur L. Harrison, Sr. (Harrison) filed a bill of complaint in the Circuit Court for Charles County against the Motor Vehicle Administration of the Department of Transportation (MVA), seeking a declaratory judgment that his motor vehicle driving and registration privileges had been illegally suspended and that a mandatory injunction be issued to compel restoration of those privileges. The Maryland Automobile Insurance Fund (MAIF) intervened in the proceedings. The relief sought was denied. Harrison appealed.

### Case No. 2—(Thacker)

Clifton Lewis Thacker (Thacker) filed a bill of complaint in the Circuit Court for Prince George's County against the Motor Vehicle Administration of the Department of Transportation (MVA), seeking a declaratory judgment that his motor vehicle driving and registration privileges had been illegally suspended and that a mandatory injunction be issued to compel restoration of those privileges. The Maryland Automobile Insurance Fund (MAIF) intervened in the proceedings. The relief sought was granted. MVA and MAIF appealed.

When the separate appeals reached the Court of Special Appeals, on motion by MVA and MAIF and with the consent of Harrison and Thacker, that court consolidated the cases for purposes of oral argument and decision.

A brief history of the commencement and subsequent amplification of the State's determination to accord a meas-

ure of amelioration to the economic havoc visited upon the persons and the families of those injured and killed by financially irresponsible negligent motorists will provide a useful preface to our discussion of the cases.

The first State plan to deal with the problem was by the passage of ch. 498, Laws of 1931. This statute required the suspension of the driving and registration privileges of negligent uninsured motorists against whom final judgments had been entered which were not paid within 30 days. The statute provided for the return of the privileges only when: (1) the amounts specified in the Act had been credited upon the judgments, or (2) the court in its discretion had authorized the payment of the judgments in installments.

The plan failed to achieve relief and was followed by the passage of ch. 836, Laws of 1957 whereby the Unsatisfied Claim and Judgment Fund (UCJF) was created. Funding of UCJF was provided in the first instance by $1.00 assessments against insured motorists and $8.00 assessments against uninsured motorists and an assessment of ½ of 1% against motor vehicle liability insurers in 1958 and by continuing assessments thereafter against those insurers. The Act made no provision for compulsory insurance. Administered by a board comprising the Commissioner of Motor Vehicles, the Commissioner of Insurance, and four representatives of insurers, the Act provided for payment to qualified judgment creditors from the State Treasury within the statute's prescribed limits upon assignment of the judgment to UCJF. The then existing provisions of law governing the suspension and return of driving and registration privileges were continued in force and were supplemented by restrictions of a very stringent nature respecting their return in cases where UCJF had paid judgments pursuant to the Act, i.e.:

"145Y. Registration, etc., not restored until fund is reimbursed.

(a) Where the license or driving privileges of any person, or the registration of a motor vehicle registered in his name, have been suspended or revoked under the

Motor Vehicle Financial-Responsibility Law of this state, and the treasurer has paid from the fund any amount in settlement of a claim or towards satisfaction of a judgment against that person, the suspension or revocation shall not be removed, nor the license, privileges, or registration, restored, nor shall any new license or privileges be issued or granted to, or registration be permitted to be made by, that person until he has—

(1) Repaid in full to the treasurer the amount so paid by him, together with interest thereon at four per centum (4%) per annum from the date of such payment, or has undertaken in writing, in the manner provided in section 145L, to repay to the treasurer the sum to be paid under a settlement, or has obtained a court order permitting payment of the amount of his indebtedness to the fund to be made in installments; and

(2) Satisfied all requirements of said Motor Vehicle Financial-Responsibility Law in respect of giving proof of ability to respond in damages for future accidents."

The judgments extended against Harrison and Thacker occurred during the lifetime of the UCJF. Neither repaid or agreed to repay the treasurer. Neither obtained a court order permitting payment of the judgments in installments.

The current State plan to lessen the economic loss resulting from financially irresponsible motorists was initiated by ch. 73, Laws of 1972, creating MAIF. Under its provisions compulsory insurance covering all motor vehicles was required for the first time. Under this statute MAIF occupied a dual role: (1) as an insurer required to provide insurance coverage to motorists unable to obtain the same from private insurers and (2) as successor to UCJF to pay, within specified limits, judgments entered against: (a) uninsured motorists who operated motor vehicles despite penal statutes; (b) known motorists beyond the reach of legal process, and (c) unknown operators of undiscovered vehicles. The legislative design to continue the stringent restrictions respecting return of license and registration privileges under MAIF as successor to UCJF is shown by

the plain language of the creating statute as will be shown. It is solely MAIF's role as successor to UCJF with which we deal under the facts of these cases.

## The Facts

### Case No. 1 (Harrison)

Harrison's driving and registration privileges had been suspended on January 11, 1963 after separate judgments: (1) for wrongful death under Lord Campbell's Act; (2) for personal injuries; and (3) for property damage, had been entered against him as the result of the negligent operation of a motor vehicle upon the highways of Maryland. Harrison was an uninsured motorist on the date of the accident and upon application of the judgment creditors UCJF paid the judgments to the extent of the limits then prescribed by law and the judgments were assigned to that agency.

On June 1, 1977—more than 12 years after entry of the aforesaid judgments and without renewal within that period—the suspensions were withdrawn and his driving and registration credentials were returned by MVA. On July 11, 1983, however, MVA notified Harrison that his privileges would again be suspended under MVA's contention that his privileges had been returned erroneously on June 1, 1977 in violation of law. On September 3, 1983 the privileges were again suspended. This action was brought by Harrison on September 21, 1983 and the relief prayed by Harrison was denied by the trial court.

### Case No. 2 (Thacker)

Thacker's driving and registration privileges had been suspended in November, 1963 after a judgment for damages for personal injuries had been entered against him as the result of the negligent operation of a motor vehicle upon the highways of Maryland. Thacker was an uninsured motorist on the date of the accident and upon application of the judgment creditor UCJF paid the judgment to the extent of the limits then prescribed by law and the judgment was assigned to that agency.

In June, 1977—more than 12 years after entry of the aforesaid judgment and without renewal within that period—the suspensions were withdrawn and Thacker's driving and registration credentials were returned by the MVA. On October 19, 1983, however, MVA notified Thacker that his privileges would again be suspended on November 3, 1983 under MVA's contention that his privileges had been returned erroneously in June, 1977 in violation of law. This action was brought by Thacker on November 2, 1983 and resulted in the passage of an order permanently enjoining MVA "from suspending the Maryland drivers license, Maryland registration plates and registration cards."

We granted certiorari prior to consideration by the Court of Special Appeals to resolve the difference of view in the two circuit courts.

## The Decision

MVA acted under Transportation Article, Title 17, Vehicle Laws—Required Security, Subtitle 2, Nonpayment of Judgment, Section 17–204, that reads as follows:

"§ 17–204. Suspension of license and registration on nonpayment of judgment.

Except as otherwise provided in this subtitle, on receipt of a certified copy of a judgment and a certificate of facts, the Administration shall suspend:

(1) The license to drive of the judgment debtor; and

(2) The registration of all vehicles owned by the judgment debtor and registered in this State." [1]

Maryland Code, Article 48A, § 243G (unchanged in any substantive way since its inception in ch. 73, Laws of 1972) governing MAIF's function as successor to UCJF reads as follows:

"§ 243G. Claims against Unsatisfied Claim and Judgment Fund; transitional provisions.

---

1. None of the exceptions provided in the subtitle have application to the subject factual situation.

(a) All claims against the Unsatisfied Claim and Judgment Fund existing as of the close of business on December 31, 1972, shall be transferred to and be deemed to be claims against the Fund. Any claim arising prior to January 1, 1973, which could have been made against the Unsatisfied Claim and Judgment Fund after January 1, 1973, but for the repeal of § 7–635 of Article 66½, may be made against the Fund to the extent that such a claim is not covered by a policy of insurance. *The provisions of §§ 7–606 through 7–629, inclusive, of Article 66½ of the Annotated Code of Maryland (1970 Replacement Volume), shall continue in effect with respect to all such claims covered by the provisions of this section notwithstanding any repeal of those sections generally;* and, except that any reference to the Unsatisfied Claim and Judgment Fund Board or the board in said sections, or in any other laws, ordinances, rules, regulations, directives, legal actions, contracts, or other documents shall be deemed to refer to the executive director, *all such claims shall be processed and resolved in accordance therewith.*" (Emphasis added.)

█ It will be observed that the stringent restrictions upon the return of the license and registration privileges of such judgment debtors as Harrison and Thacker as were imposed by § 145Y of § 1, ch. 836, Laws of 1957, *supra,* were continued in full force and effect by continuing the life of § 7–629 of Article 66½ of the Annotated Code of Maryland (1970 Repl.Vol.)[2] in the above section in spite of the

---

2. The provisions of Maryland Code, Article 66½, § 7–629 (1970 Repl. Vol.) survive as to all claims in MAIF's role as successor to UCJF notwithstanding the repeal of the section *generally* and read as follows:

"§ 7–629. License, registration, etc., not restored until fund is reimbursed and Financial Responsibility Law complied with.

(a) *Prerequisites to restoration or issuance of license, registration, etc.* Where the license or driving privileges of any person, or the registration of a motor vehicle registered in his name, have been suspended or revoked under the Motor Vehicle Financial Responsi-

repeal of that and other sections generally. In the subject cases neither Harrison nor Thacker has repaid or made any arrangement to repay the monies paid by UCJF to the judgment creditors from the State Treasury. Nor has either obtained a court order permitting payment in installments.

But, say Harrison and Thacker, the restrictive provisions of Article 66½, § 7–629, *supra*, in its extended life under Article 48A, § 243G, *supra*, apply only when the judgment upon which suspension depends is an "enforceable judgment." They contend that the judgments are not "enforceable judgments" because more than twelve years have passed since their obtention without action by UCJF or MAIF to renew them within a 12-year period.

For their contention that the judgments against them must be "enforceable judgments" the argument of Harrison and Thacker is somewhat convoluted. This is so because the current language of Transportation Article, § 17–201 upon which they rely does not use the phrase "enforceable judgment" in its text. The section now reads as follows:

bility Law of this State, and the Treasurer has paid from the fund any amount in settlement of a claim or towards satisfaction of a judgment against that person, the suspension or revocation shall not be removed, nor the license, privileges, or registration, restored, nor shall any new license or privileges be issued or granted to, or registration be permitted to be made by, that person until he has—
(1) Repaid in full to the Treasurer the amount paid by him in the case of amounts of one thousand dollars ($1,000) or less, or repaid in full to the Treasurer in the case of amounts exceeding one thousand dollars ($1,000), a sum to be set by the Board, but never less than 50% of the amount paid by the Treasurer, together with interest thereon at four per centum (4%) per annum from the date of the settlement or assignment of judgment, or has undertaken in writing, in the manner provided in § 7–614, to repay to the Treasurer the sum to be paid under a settlement, or has obtained a court order permitting payment of the amount of his indebtedness to the fund to be made in installments; and
(2) Satisfied all requirements of said Motor Vehicle Financial Responsibility Law in respect of giving proof of ability to respond in damages for future accidents."
It contains no substantive change from the time of initial passage in the legislation creating UCJF (ch. 836, Laws of 1957, *supra* ).

"§ 17–201.  'Judgment' defined.

In this subtitle, 'judgment' means any final judgment resulting from:

(1) A cause of action for damages arising out of the ownership, maintenance, or use on any highway or other property open to the public of any vehicle of a type required to be registered in this State;  or

(2) A cause of action on an agreement of settlement for damages arising out of the ownership, maintenance, or use on any highway or other property open to the public of any vehicle of a type required to be registered in this State." .

They point out that the late Judge Davidson in *Rentals Unlimited v. Administrator, Motor Vehicle Administration*, 286 Md. 104, 405 A.2d 744 (1979) had stated for this Court that the legislative history of § 17–201 of the Transportation Article and the revisor's note that its new language "final judgment" derived without substantive change from former Article 66½, § 7–201 combined to require the conclusion that the words "final judgment" meant "any final judgment of a court of competent jurisdiction of any state or of the United States" (the language used in the immediately prior statute).[3]  286 Md. at 109, 405 A.2d 744.

A fortiori, they argue, the words "final judgment" in the current statute require the conclusion that they mean

---

3.  The full text of the prior statute reads as follows:
"§ 7–201.  Meaning of 'judgment.'

"For the purpose of this subtitle the term 'judgment' means any enforceable judgment which has become final by expiration, without appeal, of the time within which an appeal might have been perfected, or by final affirmation on appeal, rendered by a court of competent jurisdiction of any state or of the United States, upon a cause of action arising out of the ownership, maintenance or use upon a highway or property open to use by the public, of any vehicle of a type subject to registration under the laws of this State, for damages, including damages for loss of services, because of bodily injury to or death of any person, or for damages because of injury to or destruction of property, including the loss of use thereof, or upon a cause of action on an agreement of settlement for such damages." .

"enforceable judgment." We agree that such an interpretation of the current language of § 17–201 of the Transportation Article is required and is a necessary corollary to our decision in *Rentals, supra.* Harrison and Thacker then go on to argue that none of the judgments are enforceable judgments because all are beyond a period of 12 years from the date of their entry and were not renewed during that period, citing Maryland Code, Courts and Judicial Proceedings Article, § 5–102, that reads as follows:

"§ 5–102. Specialties.

(a) *Twelve-year limitation.*—An action on one of the following specialties shall be filed within 12 years after the cause of action accrues, or within 12 years from the date of the death of the last to die of the principal debtor or creditor, whichever is sooner:

(1) Promissory note or other instrument under seal;

(2) Bond except a public officer's bond;

(3) Judgment;

(4) Recognizance;

(5) Contract under seal; or

(6) Any other specialty.

(b) *Suspension of time.*—A payment of principal or interest on a specialty suspends the operation of this section as to the specialty for three years after the date of payment.

(c) *Exception.*—This section does not apply to a specialty taken for the use of the State."

MAIF and MVA contend that the section has no application to the Harrison and Thacker judgments because limitations may not be asserted against the State. We shall hold that the judgments in the subject cases were judgments taken for the use of the State within the exception set forth in (c) above and thus the statute of limitations is not applicable. We explain. The circumstance that the State of Maryland was not a party to the proceedings below has no bearing upon the question whether a statute of limitations must yield to State immunity. *Goldberg v. Howard Co.*

*Welfare Bd.,* 260 Md. 351, 355, 272 A.2d 397 (1971). The State necessarily must carry out its governmental functions through agencies or other instrumentalities. In *Katz v. Washington Sub. San. Comm'n,* 284 Md. 503, 507–08, 397 A.2d 1027 (1979), we said, "In Maryland the doctrine of sovereign immunity is applicable not only to the State itself, but also to its agencies and instrumentalities, unless the General Assembly has waived the immunity either directly or by necessary implication." In *Wash. Sub. San. Comm'n v. Pride Homes,* 291 Md. 537, 435 A.2d 796 (1981), Judge Smith for this Court considered the question in depth from which we quote certain pertinent language:

"In *Central Coll. Unit v. Atl. Con. Line,* 277 Md. 626, 627, 356 A.2d 555 (1976), Judge Singley said for the Court, 'The question which is squarely raised by this appeal is whether the doctrine of sovereign immunity precludes a defendant's assertion of limitations as a defense to an action brought by the State in its sovereign capacity.' We held that it did. We considered the matter at some length in order to distinguish *Goldberg v. Howard Co. Welfare Bd.,* 260 Md. 351, 272 A.2d 397 (1971), upon which Atlantic relied. We held in *Goldberg* that limitations were not a bar in an action growing out of the exercise of a governmental function by a political subdivision of the State. 260 Md. at 358 [272 A.2d 397]. A corollary to this rule was expressed by Judge McWilliams for the Court in *Siejack v. City of Baltimore,* 270 Md. 640, 644, 313 A.2d 843 (1974): 'Quite likely nothing is more solidly established than the rule that title to property held by a municipal corporation in its governmental capacity, for a public use, cannot be acquired by adverse possession,' citing a number of our prior cases. *See also, Ulman v. Charles St. Ave. Co.,* 83 Md. 130, 144–45, 34 A. 366 (1896), and *Hall v. Gittings,* 2 H. & J. 112, 114 (1807), as to the State." 291 Md. at 540, 435 A.2d 796.

\*　　\*　　\*　　\*　　\*　　\*

"It is suggested that Central Collection 'does not aid [the Commission] because this Court later held in *Katz* ... that the ... Commission had waived sovereign immunity.' We did not hold that the Commission had waived sovereign immunity. In fact, it is doubtful whether the Commission as such could waive such immunity. *See, e.g., Bd. of Education v. Alcrymat Corp.*, 258 Md. 508, 513–16, 266 A.2d 349 (1970)...." 291 Md. at 542, 435 A.2d 796.

"As far back as *State v. Baltimore & O.R.R.*, 34 Md. 344, 374 (1871), *aff'd* 88 U.S. (21 Wall.) 456, 22 L.Ed. 678 (1875), Chief Judge Bartol said for this Court relative to sovereign immunity, 'This immunity belongs to the State by reason of her prerogative as a sovereign, and on grounds of public policy.' To similar effect see *Weyler v. Gibson*, 110 Md. 636, 654, 73 A. 261 (1909), and *State v. Wingert*, 132 Md. 605, 611, 104 A. 117 (1918). More recently, in *Chas. E. Brohawn & Bros. v. Board*, 269 Md. 164, 165–66, 304 A.2d 819 (1973), Judge Digges said for the Court, 'By this doctrine, a litigant is precluded from asserting an otherwise meritorious cause of action against this sovereign State or one of its agencies which has inherited its sovereign attributes, unless expressly waived by statute or by a necessary inference from such a legislative enactment. *Godwin v. County Comm'rs of St. Mary's Co.*, 256 Md. 326, 260 A.2d 295 (1970); *Dunne v. State*, 162 Md. 274, 280, 159 A. 751 (1932).' " 291 Md. at 544, 435 A.2d 796.

The legislation that included the creation of UCJF formulated a new State policy with a dual aspect whereby (1) a measure of compensation was provided to those injured or to the families of those killed through the negligence of uninsured motorists and (2) the further use of the highways of the State was denied to such uninsured motorists and their vehicles until remuneration had been made and future financial responsibility had been assured.

█ Providing for the welfare of the public and for the correction or rectification of offenders against the health and security of the public are fundamental elements of governmental action. The Legislature committed to UCJF and by later amendment to MAIF an essential role in the enforcement of that governmental function. We hold that in the exercise of that essential role UCJF and its successor MAIF are State agencies which have inherited the sovereign attributes of the State and are performing a governmental function. Entry of the Harrison and Thacker judgments to the use of UCJF was the legal equivalent of their entry to the use of the State. Accordingly, to the extent of the payments by UCJF, those judgments are "enforceable judgments" within the meaning of Tr. Art. 17–201, *supra,* as to which the provisions of § 5–102 of the Courts and Judicial Proceedings Article form no bar.

Finally, Harrison and Thacker ask us to consider whether "selective enforcement of the suspension privileges" was a denial of the constitutional right to equal protection of the law. The suggested issue was not raised or decided below. We shall not consider it. Maryland Rule 885.

In No. 79—JUDGMENT OF THE CIRCUIT COURT FOR CHARLES COUNTY AFFIRMED. APPELLANT HARRISON TO PAY THE COSTS.

In No. 84—JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED AND CASE REMANDED FOR ENTRY OF A DECLARATORY JUDGMENT CONSISTENT WITH THIS OPINION. APPELLEE THACKER TO PAY THE COSTS.

COLE, Judge, concurring.

I concur in the judgments because I believe these cases are determined by the provisions of Maryland Code (1984 Repl.Vol.) § 17–207 of the Transportation Article.