78 A.3d 909

**STATE of Maryland, CENTRAL COLLECTION UNIT**

v.

**Russell BUCKINGHAM, et al.**

**No. 434, Sept. Term, 2012.**

Court of Special Appeals of Maryland.

Nov. 4, 2013.

Lisa Jenkins (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellant.

Joseph F. Zauner, III (Zauner & Mtimet, PA, on the brief) Baltimore, MD, for appellee.

Panel: KRAUSER, C.J., WOODWARD and NAZARIAN, JJ.

KRAUSER, C.J.

Maryland Rule 2–625 provides that "a money judgment expires 12 years from the date of entry or most recent renewal." In this appeal, we are asked to decide whether that rule applies to a money judgment held by the State of Maryland.

The State obtained the judgment at issue, in the Circuit Court for Baltimore County, against Russell Buckingham, Jr., a State lottery agent, after he failed to remit to the State the proceeds from the sale of lottery tickets. More than twelve years after that judgment was entered, the State obtained writs to garnish Buckingham's wages, which were thereafter

served on his employer. In response, Buckingham filed a motion, requesting that the State's judgment be declared "null and void" and that the writs in question be quashed. When, citing Rule 2–625, the Baltimore County circuit court granted that motion, the State noted this appeal.

Rule 2–625 implements the twelve-year limitations period found in section 5–102 of the Courts and Judicial Proceedings Article.[1] Because, in our view, that limitations period is not applicable to a judgment held by the State, we hold that the circuit court erred in both finding that the State's judgment against Buckingham had "expired" and in, subsequently, quashing the State's writs of garnishment.

## Background

On March 27, 1998, a judgment in the form of a "notice of lien"[2] was entered, in the Baltimore County circuit court, in favor of the State of Maryland and against Russell Frost Buckingham, Jr., in the amount of $7,078.64, plus interest, reflecting proceeds from the sale of lottery tickets, which Buckingham had failed to remit to the State, together with "court costs," a "service charge," and "penalties." More than twelve years later, on September 13, 2010, that judgment was then "indexed"[3] in favor of the Central Collection Unit of the Maryland Department of Budget and Management[4] on behalf

---

1. Md.Code (1974, 2013 Repl.Vol.), § 5–102 of the Courts and Judicial Proceedings Article.

2. Section 9–119(e)(1) of the State Government Article authorizes the State Lottery Agency to file a notice of lien in a circuit court against a licensed agent in the amount due to the agency, including any "interest or penalty charge." Filing that notice of lien "has the same effect as a judgment lien." Md.Code (1984, 2009 Rep. Vol.), § 9–119 of the State Government Article.

3. When a judgment is indexed, it is entered into an alphabetical record of judgment liens under the names of both the debtor and the holder of the judgment. *See* Md.Code (1974, 2010 Repl.Vol.), § 3–302(a) of the Real Property Article.

4. The Central Collection Unit is "responsible for the collection of each delinquent account or other debt that is owed to the State or any of its

of the State Lottery Agency ("State"), although it had never been renewed. At that time, the State also obtained a writ garnishing Buckingham's wages that was subsequently served on his employer, RFB Trucking, Inc.[5] The writ was in the amount of $14,574.30, manifesting the proceeds from the un-remitted sale of lottery tickets, plus interest, court costs, and attorney fees. A year later, the State obtained a second writ of garnishment of wages, which, because of the accrual of additional interest since the first writ, was in the amount of $15,219.23.

Following the second writ of garnishment, Buckingham moved to have the court declare the March 27, 1998, judgment against him "null and void" and to quash the previous two writs of garnishment on the grounds that the judgment, having not been renewed, had expired on March 27, 2010, twelve years after it had been entered. Following a hearing, the circuit court granted Buckingham's motion, declaring that, pursuant to Maryland Rule 2–625, the judgment had "expired" and quashing the writs of garnishment. After its motion for reconsideration was denied, the State noted this appeal.

### Discussion

■ The State claims that, because it is not subject to the limitations period created by Section 5–102 of the Courts and Judicial Proceedings Article and purportedly implemented by Rule 2–625, the circuit court erred in concluding that Rule 2–625 barred the State from enforcing its March 27, 1998, judgment against Buckingham. Buckingham disagrees, insist-ing that the State must renew a judgment it holds, as any other judgment holder must do under Rule 2–625, or the judgment will expire after twelve years. And that is what, Buckingham claims, occurred here. Unfortunately for Buck-ingham, we agree with the State, that is, that Rule 2–625

---

officials or units." Md.Code (2001, 2009 Repl.Vol.), § 3–302(a)(1) of the State Finance and Procurement Article.

**5.** The record does not disclose whether Buckingham is a stockholder or officer of RFB Trucking, Inc. He is listed as its resident agent, however.

implements the limitations period found in Section 5–102 and that, therefore, the State was not required to renew its judgment within twelve years of having obtained it, a conclusion which compels us to reverse the judgment below.

Section 5–102 provides that an action on a judgment must be filed within twelve years from the date that the cause of action accrues. But it specifically exempts, from that limitations period, actions on a judgment held by the State. Specifically, the section states, in part:

(a) Twelve-year limitation.—An action on one of the following specialties shall be filed within 12 years after the cause of action accrues, or within 12 years from the date of the death of the last to die of the principal debtor or creditor, whichever is sooner:

(1) Promissory note or other instrument under seal;

(2) Bond except a public officer's bond;

(3) Judgment;

(4) Recognizance;

(5) Contract under seal; or

(6) Any other specialty.

But most relevant to the issue before us is subsection (c) of section 5–102 which states, "This section does not apply to a specialty taken for the use of the State." With this State exemption in mind, we turn to Rule 2–625 that provides that a money judgment expires after twelve years, unless it has been renewed by the judgment holder. Missing from that rule is an exemption for judgments held by the State as is found in section 5–102. Rule 2–625 states:

A money judgment expires 12 years from the date of entry or most recent renewal. At any time before expiration of the judgment, the judgment holder may file a notice of renewal and the clerk shall enter the judgment renewed.

Because the statute expressly exempts judgments held by the State and the rule does not, we are faced with the question of whether the rule, alone, may be properly invoked to extinguish the State's right to enforce its judgments after twelve

years or whether it should be read so that it impliedly incorporates the State's exemption pronounced in section 5–102. Our answer to that question begins with the observation that the "cardinal rule" of statutory interpretation "is to ascertain and effectuate legislative intent," *Mayor of Baltimore v. Chase,* 360 Md. 121, 128, 756 A.2d 987 (2000), and that "[t]he primary source from which we glean this intention is the language of the statute itself," *Subsequent Injury Fund v. Ehrman,* 89 Md.App. 741, 747, 599 A.2d 875 (1992) (quoting *Mazor v. Dep't of Correction,* 279 Md. 355, 360, 369 A.2d 82 (1977)). "If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." *Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204 (1994). Finally, we conclude by noting that these tenets of construction apply not only to our statutes but to our rules as well. *State v. Montgomery,* 334 Md. 20, 24, 637 A.2d 1193 (1994).

■ We now turn to the legal axiom which provides the fulcrum for our analysis, which is: Under the principle of sovereign immunity, state statutes of limitations do not apply to the state, unless a state statute provides otherwise. *Central Collection Unit v. Atlantic Container Line,* 277 Md. 626, 629, 356 A.2d 555 (1976). In applying that doctrine, we observe that, in enacting section 5–102, the Legislature did not expressly waive the State's immunity as to limitations on actions taken on a judgment in the State's favor. In fact, it did just the opposite. Apparently not content to rely on the principles of sovereign immunity, the Legislature expressly exempted the State from the running of those limitations. Although, when the Court of Appeals adopted Rule 2–625, it did not expressly exempt State judgments from the operation of that rule, it did not need to, as "any waiver of immunity must emanate from the legislature." *Bradshaw v. Prince George's Cnty.,* 284 Md. 294, 300, 396 A.2d 255 (1979).

Moreover, the rule of harmonization requires that we "not read statutory language in a vacuum, nor . . . confine strictly

our interpretation of a statute's plain language to the isolated section alone." *Lowery v. State,* 430 Md. 477, 496, 61 A.3d 794 (2013) (quoting *Lockshin v. Semsker,* 412 Md. 257, 275–76, 987 A.2d 18 (2010)). Instead, "[w]e presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope." *Id.* When we apply that presumption, we are compelled to conclude that Rule 2–625 does not extinguish an unrenewed judgment held by the State that is more than twelve years old.

First of all, we note that, although section 5–102 imposes a twelve-year limitations period on the life of judgments, it does not set out the procedures for implementing that temporal restriction. But Rule 2–625 does. It provides that a money judgment expires after twelve years, but may be renewed by the judgment holder before that twelve-year period lapses. To do so, the holder of that judgment is required, by Rule 2–625, to file a notice of renewal with the clerk, who is then to "enter the judgment renewed." As that rule implements the limitations period found in section 5–102, the rule also, by implication, incorporates that section's State-held judgment exemption.

Furthermore, even if the statute appears to be clear and unambiguous, as it does here, we may, "in the interest of completeness" and as part of a "confirmatory process," delve into "the legislative history of the statute under review" to "compare the result obtained by use of its plain language with that which results when the purpose of the statute is taken into account." *Mayor and City Council of Balt. v. Chase,* 360 Md. 121, 131, 756 A.2d 987 (2000) (citation omitted). And the history of Rule 2–625 confirms our interpretation.

Rule 2–625 was derived from former Rules 622 and 624 which were adopted in 1956. Together they provided that a judgment, although ordinarily not enforceable by execution or attachment more than twelve years from the date of the judgment, could be enforced if the judgment holder obtained a

writ of *scire facias*,[6] subject, however, to temporal limitations. Rule 622 set out the twelve-year period for enforcing judgments, stating:

At any time within twelve years from the date of a judgment the court where such judgment is entered or recorded, pursuant to Rule 619 (Recording of Judgment), may issue an execution or attachment. The judgment may be otherwise proceeded on within twelve years from its date.

Rule 624 then outlined the requirements for renewal of judgments through the writ of *scire facias*. Under that procedure, a judgment holder could seek a writ of *scire facias* to have a judgment renewed or revived, but the judgment could not be renewed over the objection of the judgment debtor after it was barred by the limitations period. Specifically, the rule provided:

A plaintiff may have a writ of *scire facias* issued to renew or revive a judgment, but such judgment shall not be renewed or revived over the objection of the judgment debtor after it has been barred by limitations. On a judgment of the People's court, trial magistrate or justice of the peace recorded with the clerk, such writ may be issued out of the court as if said judgment had been originally rendered by the court. The lien of a judgment renewed or revived on a writ of *scire facias* issued after the expiration of twelve years from the date of the original judgment shall exist only from the date of the issuance of the writ of *scire facias*.

Of particular relevance to our analysis is the direct reference in Rule 624 to the limitations period for judgments. The rule permitted the renewal or revival of a judgment by writ of *scire facias*, but not if the judgment debtor had objected after

---

**6.** A writ of *scire facias* is a "writ requiring the person against whom it is issued to appear and show cause why some matter of record should not be annulled or vacated," or, as is relevant in the setting of this case, "why a dormant judgment against that person should not be revived." *Black's Law Dictionary* 1347 (7th ed.2009).

the limitations period had run. But a judgment debtor could not successfully raise limitations to prevent the State from reviving a judgment via a writ of *scire facias*. *See, e.g., Swearingen v. United States*, 11 G. & J. 373 (1841) (applying the State's immunity from the running of limitations for reviving a judgment through a writ of *scire facias* to the United States).

In 1981, Rule 2–624 was proposed as a replacement to Rules 622 and 624 but was not adopted. Then, in 1984, Rule 2–625, which was nearly identical to Rule 2–624, was both proposed and adopted.

The reason that we recount this procedural history is that, in a report which accompanied the unadopted and nearly identical predecessor to Rule 2–625, that is, Rule 2–624, the rules committee noted that Rule 2–624 retained the twelve-year limitations period but simplified the procedure for renewing judgments by substituting a ministerial act by the clerk for the "adversarial aspects" of a writ of *scire facias*. The committee stated:

> This rule [2–624] retains the 12 year limitations under present Rule 622 a. However the draft clarifies that the limitation applies only to a judgment for a sum certain and not to other judgments such as injunctions and declaratory judgments.

> The renewal procedure is substantially different from existing *scire facias* procedures of Subtitle BT, which should be rescinded upon adoption of this rule. **Section (b) would eliminate the service and adversarial aspects of *scire facias* by substituting an ex parte procedure under which the plaintiff simply files a notice of renewal and the clerk as a ministerial function renews the judgment, unless the court records show that more than 12 years have passed since the judgment was entered or most recently renewed.** If more than 12 years have passed the clerk should not renew the judgment, even though no objection to the renewal is filed. This differs from *scire*

*facias* under which the 12 years limitation period is only an affirmative defense, which may be waived.

Minutes, Court of Appeals Standing Committee on Rules of Practice and Procedure, Nov. 20–21, 1981, at 24 (emphasis added).

The rule change reflected in Rule 2–624 (later adopted in Rule 2–625) was, according to the rules committee, a change in procedure. The revision, the committee said, was to simplify the process for renewing a judgment by doing away with the process of *scire facias* and its associated "service and adversarial aspects." To that end, the change eliminated the requirement that a judgment holder instigate an adversarial process by seeking a writ of *scire facias* to renew a judgment and that a judgment debtor object to that renewal on limitations grounds. Thus, today, under Rule 2–625, a judgment holder now need only request, *ex parte,* that the clerk renew the judgment and the judgment debtor need not object but, instead, can rely on the clerk ensuring that a judgment, more than twelve years old, will not be renewed. In short, if the judgment is no more than twelve years old, the clerk will renew it, but, if it is more than twelve years old, the clerk will not do so. Although the reference to the limitations period that had been in the proceeding rule (Rule 624) was removed, the twelve-year limitations period contained in section 5–102 remained.

Thus, the history of Rule 2–625 confirms that it was not intended to create a new bar to the enforcement of judgments, but to change procedurally the implementation of the limitations period found in section 5–102. And it certainly was not intended to subject the State to the twelve-year limitations period found in section 5–102.

As it did below, the State cites *Harrison v. Motor Vehicle Admin.,* 302 Md. 634, 490 A.2d 694 (1985), for the proposition that the State's exemption from the limitations period in section 5–102 survived the adoption of Rule 2–625. Buckingham responds that *Harrison* does not control because Rule 2–

625 was not in effect when it was decided and that, in any event, that rule was not addressed in that decision.

In *Harrison*, the Court of Appeals considered the consolidated cases of Arthur Harrison, Sr., and Clifton Lewis Thacker, who had each had their driving and motor vehicle registration privileges suspended by the Motor Vehicle Administration of the Department of Transportation ("MVA"). Individual judgments had been entered against Harrison and Thacker as a result of separate motor vehicle accidents—judgments for wrongful death and negligent operation of a motor vehicle against Harrison and a judgment for negligent operation of a motor vehicle against Thacker. 302 Md. at 640, 490 A.2d 694. Because Harrison and Thacker were uninsured, the Unsatisfied Claim and Judgment Fund ("UCJF") paid the holders of the judgments against them. *Id.* Those judgments were then statutorily assigned to the UCJF, and the driving and licensing privileges of Harrison and Thacker were suspended pending satisfaction of the judgments. *Id.*

After the driving and licensing privileges of Harrison and Thacker had been restored and more than twelve years had passed since the entry of the original judgments against them, the MVA, once again, suspended the privileges of Harrison and Thacker on the grounds that they had not paid the judgments against them, held by the UCJF. Harrison and Thacker responded, by filing separate declaratory judgment actions in different circuit courts, against the MVA, asserting that the MVA had no authority to suspend their privileges because the limitations period had run on the judgments against them. The Circuit Court for Charles County denied Harrison's request for a declaratory judgment, but the Circuit Court for Prince George's County granted Thacker's. *Id.* at 641–42, 490 A.2d 694.

Ultimately, the Court of Appeals held that, because the judgments against Harrison and Thacker were "taken for the use of the State," the State's exemption from the twelve-year limitations period found in section 5–102(c) applied, and, because the judgments were still enforceable, the MVA could

suspend Harrison and Thacker's driving and licensing privileges for failing to pay them. *Id.* at 645, 490 A.2d 694. Thus, when presented with a case where the State had failed to renew certain judgments within twelve years, the Court of Appeals held that that failure did not prevent the State from later enforcing those judgments. That is precisely the case here.

We concede, however, that nowhere in its opinion, did the Court refer to Rule 2–625, an omission that Buckingham had seized upon in declaring that *Harrison* lends no support to the State's assertion that its exemption from the twelve-year limitations period survives the language of Rule 2–625.

Although the Court did not discuss Rule 2–625, or any of its predecessors, it was well aware that the renewal of judgments, the rule's subject matter, was an integral part of the case before it. In describing the claims of Harrison and Thacker, the Court expressly stated that the judgments against them had not been renewed by the State. Specifically, the Court said, "They contend that the judgments are not 'enforceable judgments' because more than twelve years have passed since their obtention without action by UCJF or MAIF to renew them within a 12–year period." *Id.* at 643, 490 A.2d 694. Although the judgments were not renewed, the Court nonetheless concluded that they were enforceable by the State.

Buckingham further maintains that the Court of Appeals did not address Rule 2–625 because it was adopted after Harrison and Thacker brought their separate actions for declaratory judgments and that, had the rule been in place before then, the Court would have reached a different conclusion, that is, it would have held that the judgments against Harrison and Thacker had expired and were unenforceable. But as we have already discussed, the adoption of Rule 2–625 only changed the procedure for implementing the twelve-year limitations period found in section 5–102 by making the judgment renewal process ministerial instead of adversarial. Therefore, the timing of the Rule's adoption is not grounds for disregarding the *Harrison* holding. In sum, the Court of

Appeals' conclusion in *Harrison* that the limitations period did not bar the State from enforcing the judgments against Harrison and Thacker supports, if not mandates, our conclusion that Rule 2–625 does not extinguish an unrenewed judgment held by the State after twelve years.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED. COSTS TO BE PAID BY APPELLEE.**